## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELAINE CODY and**<br>**DAVID CODY** )<br>)<br>) | |
| ) | **CIVIL ACTION NO.** |
| **Plaintiffs,** ) | **1:07-cv-01887 (JR/AK)** |
| ) | |
| **vs.** ) | |
| ) | |
| **ELI LILLY AND COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

## DEFENDANT ELI LILLY AND COMPANY'S
## <u>MOTION TO TRANSFER TO THE DISTRICT OF MASSACHUSETTS</u>

COMES NOW defendant Eli Lilly and Company ("Lilly"), by and through its designated counsel, and respectfully moves to transfer this action, pursuant to 28 U.S.C. Section 1404(a), to the United States District Court for the District of Massachusetts.

This case should be transferred because the District of Massachusetts is a more convenient forum than the District of Columbia, the action could have been brought in the District of Massachusetts, and transfer from a district with no connection to the plaintiffs' cause of action is in the interest of justice. *See* 28 U.S.C. § 1404(a) (permitting transfer to a district or division where the case could have been brought in the first instance "for the convenience of parties and witnesses, in the interest of justice"); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981) (stating that a district court enjoys wide discretion in deciding whether to transfer an action to a more convenient forum).

Transfer to the District of Massachusetts is appropriate because it is a more convenient forum for the parties and witnesses:

- Plaintiffs Elaine and David Cody reside in Pocasset, Massachusetts;

1

145787v3

- The events allegedly giving rise to plaintiffs' cause of action – the prescription, purchase, and alleged exposure to DES – occurred in Massachusetts;

- All of plaintiff Elaine Cody's doctors – who purportedly diagnosed and treated her alleged injuries – are located in Massachusetts;

- Plaintiff Elaine Cody's mother, a witness with substantial knowledge of facts at issue in this matter, resides in Massachusetts;

- Lilly is unaware of a single non-party fact witness who resides in the District of Columbia or is within the subpoena power of this Court;

- This case has no apparent connection to the District of Columbia except that plaintiffs filed the case here; and

- The interests of justice will not be served by burdening the citizens of the District of Columbia with a case that has no connection to this forum.

Therefore, for the convenience of the parties and witnesses and in the interests of justice, the Court should transfer this action to the District of Massachusetts.

WHEREFORE, based on the foregoing reasons and those more fully set forth in the accompanying Memorandum of Points and Authorities in Support of this Motion, Lilly respectfully requests that this Court grant its motion to transfer this case to the District of Massachusetts.

Respectfully submitted,

SHOOK, HARDY & BACON, L.L.P

/s/ John Chadwick Coots
Michelle R. Mangrum, D.C. Bar No. 473634
John Chadwick Coots, D.C. Bar No. 461979
600 14TH Street, N.W., Suite 800
Washington, DC  20005-2004
Phone: (202) 783-8400
Fax: (202) 783-4211

and

2

David W. Brooks
SHOOK, HARDY & BACON, LLP
2555 Grand Boulevard
Kansas City, MO 64108
Phone: (816) 474-6550
Fax: (816) 421-5547

**ATTORNEYS FOR DEFENDANT
ELI LILLY AND COMPANY**

## L.Cv.R. 7(m) CERTIFICATION

Counsel for Lilly has conferred with plaintiffs' counsel, as required by L.Cv.R. 7(m). Plaintiffs' counsel indicated that plaintiffs do not consent to the relief sought in this Motion.

 /s/ John Chadwick Coots
**ATTORNEY FOR DEFENDANT
ELI LILLY AND COMPANY**

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, this 22nd day of February, 2008, which sent notification of such filing to all counsel of record listed below.

Aaron M. Levine
Aaron M. Levine & Associates
1320 19th St., N.W., Suite 500
Washington, DC 20036

**Attorneys for Plaintiffs**

 /s/ John Chadwick Coots
**ATTORNEY FOR DEFENDANT
ELI LILLY AND COMPANY**

3

145787v3

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

ELAINE CODY and<br>
DAVID CODY<br>
<br>
     Plaintiffs,<br>
<br>
  vs.<br>
<br>
ELI LILLY AND COMPANY,<br>
<br>
     Defendant.

</td><td>

)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)

</td><td>

CIVIL ACTION NO.<br>
1:07-cv-01887 (JR/AK)

</td></tr>
</table>

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT ELI LILLY AND COMPANY'S
MOTION TO TRANSFER TO THE DISTRICT OF MASSACHUSETTS

COMES NOW defendant Eli Lilly and Company ("Lilly"), by and through its designated counsel, and respectfully moves to transfer this action to the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. Section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice." Plaintiffs Elaine and David Cody, who are Massachusetts residents, allege injuries as a result of plaintiff Elaine Cody's alleged exposure to a synthetic estrogen, diethylstilbestrol ("DES"), during her mother's pregnancy with her in Massachusetts. This action has no connection to the District of Columbia. The relevant facts in this case demonstrate that the District of Massachusetts is a more convenient forum for the parties and witnesses and that transfer would serve the interest of justice:

1

145713v5

- Plaintiffs Elaine and David Cody reside in Pocasset, Massachusetts;

- The events allegedly giving rise to plaintiffs' cause of action – the prescription, purchase, and alleged exposure to DES – occurred in Massachusetts;

- All of plaintiff Elaine Cody's doctors – who purportedly diagnosed and treated her alleged injuries – are located in Massachusetts;

- Plaintiff Elaine Cody's mother, a witness with substantial knowledge of facts at issue in this matter, resides in Massachusetts;

- Lilly is unaware of a single non-party fact witness who resides in the District of Columbia or is within the subpoena power of this Court;

- This case has no apparent connection to the District of Columbia except that plaintiffs filed the case here; and

- The interests of justice will not be served by burdening the citizens of the District of Columbia with a case that has no connection to this forum.

Accordingly, for the convenience of the parties and witnesses and in the interest of justice, the Court should transfer this action to the District of Massachusetts.

## ARGUMENT

The Court should exercise its broad discretion to transfer this action to the District of Massachusetts. Title 28 U.S.C. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Whether to transfer an action to a more convenient forum falls within the wide discretion of the district court. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981) (stating that "[d]istrict courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of forum non conveniens").

Transfer is proper where: (1) the action might have been brought originally in the transferee district; (2) the transferee district is more convenient for the parties and witnesses; (3) there is no nexus between the transferor district and the cause of action; and (4) the interests of

justice would be served by transfer. *See* 28 U.S.C. § 1404(a); *Abbott Labs. v. U.S. Fidelity & Guar. Co.*, No. 88-2232, 1989 WL 5557, at *2 (D.D.C. Jan. 10, 1989) (holding that "while the plaintiff's choice of forum is generally entitled to deference, where the 'forum choice has no factual nexus with the lawsuit . . . [plaintiffs'] choice of forum may be accorded less weight in a section 1404(a) analysis'"). As set forth below, all of these factors support the transfer of this action to the District of Massachusetts.

### A.    This Action Might Have Been Brought Originally in the District Of Massachusetts

Section 1404(a) permits transfer to a district or division where the case could have been brought in the first instance. Plaintiffs could have brought this action originally in the District of Massachusetts because the District of Massachusetts has subject matter jurisdiction over this action and venue is proper.

The District of Massachusetts has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332 because there is complete diversity of citizenship among the parties.[1] Plaintiffs Elaine and David Cody reside in and are domiciled in Massachusetts. (Plaintiff Elaine Cody's Answers to Defendant Eli Lilly and Company's First Set of Interrogatories, No. 2, attached as **Exhibit 1**). Lilly is incorporated in and has its principal place of business in Indiana.

Moreover, venue is proper in the District of Massachusetts. Title 28 U.S.C. Section 1391(a) states that "[a] civil action wherein jurisdiction is founded only on diversity of citizenship may be brought only in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Here, plaintiff Elaine Cody's mother was

---

[1]    Lilly does not contest the amount in controversy requirement since it does not appear to a legal certainty that plaintiffs cannot recover more than $75,000. Lilly, however, denies that plaintiffs are entitled to recover any damages.

3

allegedly prescribed DES, purchased DES, and ingested DES in Massachusetts, where she resided throughout her pregnancy with plaintiff and where she continues to reside today. (Exhibit 1, Nos. 11, 17, 20.)  Plaintiff Elaine Cody was allegedly exposed to and injured by DES *in utero* in Massachusetts, and except for the semesters she attended college she has lived in Massachusetts all of her life. (Exhibit 1, Nos. 2, 11, 20.)  All of plaintiff Elaine Cody's treating physicians, who allegedly diagnosed and treated her alleged injuries, are in Massachusetts. (Exhibit 1, No. 14.)  Plaintiff David Cody lives in Massachusetts, where he has lived all of his life.  (Plaintiff David Cody's Answers to Defendant Eli Lilly and Company's First Set of Interrogatories, No. 1, attached as **Exhibit 2**.)  As such, "a substantial part of the events or omissions giving rise to the claim occurred" in Massachusetts, and venue is appropriate, there.

This action might have been brought originally in the District of Massachusetts, supporting transfer of this action to the District of Massachusetts.

### B.    The District Of Massachusetts Is More Convenient For The Parties and Witnesses

Section 1404(a) instructs district courts to consider the convenience of parties and witnesses in deciding whether to transfer an action.  In doing so, courts have also looked at ease of access to sources of proof and the amount of expense for willing witnesses.  *See Abbott Labs.*, 1989 WL 5557, at *2; *see also Trout Unlimited v. U.S. Dept. of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996) (listing the ease of access to sources of proof and whether the claim arose elsewhere as private interest considerations).  Moreover, this Court has noted that the transferee court's ability to reach non-party witnesses through its subpoena power is a factor weighing in favor of transfer.  *See Lentz v. Eli Lilly and Co.*, No. 06-1374, at 3 (D.D.C. Dec. 18, 2006) (Huvelle, J.) (**Attachment A** to Affidavit of John Chadwick Coots in Support of Defendant Eli Lilly and Company's Motion to Transfer, attached as **Exhibit 3**); *see also McKelvey v. Eli Lilly*

4

*and Co.*, No. 06-1820, at 4 (D.D.C. Apr. 12, 2007) (Collyer, J.) (**Attachment D** to Exhibit 3) ("A court's ability to compel the appearance of unwilling non-party witnesses is an important factor in determining a motion to transfer.") (citations omitted). Here, most, if not all, of the potential witnesses and sources of proof concerning the injuries alleged in this case are located in the District of Massachusetts and are subject to that court's subpoena power. As such, Massachusetts is a more convenient forum for the parties and witnesses.

There are a number of issues in DES cases that typically require deposing witnesses, examining medical records, and calling witnesses to trial. One such issue is exposure, *i.e.*, whether the plaintiff's mother actually ingested DES during her pregnancy with the plaintiff. Here, the mother is a Massachusetts resident, who allegedly ingested DES in Massachusetts. Testimony from the mother will be required in this action, but the District Court for the District of Columbia cannot compel her to testify at trial. The District of Massachusetts, however, can compel such testimony. In addition, the medical records for the mother are relevant to this issue, and all of these, to the extent they exist, are in Massachusetts. (*See* Exhibit 1, No. 11.)

Another issue is determining which company manufactured the DES that the mother allegedly ingested. The principal witnesses on this issue are pharmacists and pharmacy employees who worked at the pharmacy where the mother allegedly filled her prescription. In this case, plaintiff Elaine Cody alleges that her mother received DES from Drug Fair in Randolph, Massachusetts. (Exhibit 1, No. 20.) The District Court for the District of Columbia, however, cannot compel any Massachusetts pharmacy witnesses who may be identified to testify at trial; the District of Massachusetts can.

A third issue concerns the nature and extent of plaintiff Elaine Cody's alleged injuries and the causes of her alleged injuries. Here, plaintiffs' case depends on testimony and

medical records from the physicians who diagnosed, treated, and evaluated plaintiff Elaine Cody. As noted, however, plaintiff Elaine Cody's treating physicians and medical records are all in Massachusetts. (Exhibit 1, No. 14.) Lilly intends to depose these physicians and believes it will be necessary to call them to testify at trial. Again, while this Court cannot compel these witnesses to testify at trial, the District of Massachusetts can.

Lilly is unaware of a single fact witness who resides in or is subject to the subpoena power of the District of Columbia. Thus, when considering the convenience of the parties and witnesses as a whole, the District of Massachusetts is the most convenient forum for this litigation.

### C. There Is No Nexus between the Transferor District and the Cause of Action; Plaintiffs' Choice Of Forum Is Entitled To Little Deference

Plaintiffs have chosen to file suit in a forum with no factual nexus to their claims, and as such, they are entitled to substantially less deference on their choice of forum. In *Abbott Laboratories*, this Court wrote that "while the plaintiff's choice of forum is generally entitled to deference, where the 'forum choice has no factual nexus with the lawsuit . . . [plaintiffs'] choice of forum may be accorded less weight in a section 1404(a) analysis.'" *Abbott Labs.*, 1989 WL 5557, at *2. "In fact, the presumption may switch to [defendant's] favor when neither party resides in the chosen forum and the cause of action arises elsewhere." *Id.* (citations and internal quotations omitted). Similarly, in *McClamrock v. Eli Lilly and Co.*, 267 F. Supp. 2d 33, 37 (D.D.C. 2003), this Court cautioned that a plaintiff should not "blindly assume" that because she chose the District of Columbia in which to file suit, that her choice of venue will not be disturbed. "[P]laintiff's choice of forum is not accorded substantial deference where 'the plaintiff's[] choice of forum has 'no meaningful ties to the controversy and no particular interest in the parties or the subject matter.'" *Id.; see also Boers v. United States*, 133 F. Supp. 2d 64,

145713v5

65 (D.D.C. 2001) (holding that "even though a court should typically give deference to a plaintiff's choice of forum, it need give substantially less deference when the forum preferred by the plaintiff is not his home forum"); *Trout Unlimited*, 944 F. Supp. at 17 (holding that "deference is mitigated . . . [and] the showing defendants must make is lessened when the 'plaintiff['s] choice [of forum] has no factual nexus to the case,' and, where . . . transfer is sought to the forum with which plaintiffs have substantial ties and where the subject matter of the lawsuit is connected to that state").

    In other DES cases involving motions to transfer, this Court has recognized that plaintiff's choice of forum is not entitled to substantial deference where the plaintiff does not reside in the forum. *See Thompson v. Eli Lilly and Co.*, No. 03-CV-00122, at 2 (D.D.C. June 27, 2003) (Walton, J.) (giving less deference to plaintiff's selected forum where that forum is not the plaintiff's home forum) (**Attachment B** to Exhibit 3); *Abramson v. Eli Lilly and Co.*, No. 03-CV-2541, at 2-3 (D.D.C. Oct. 25, 2004) (Bates, J.) (same) (**Attachment C** to Exhibit 3); *Lentz*, Attachment A to Exhibit 3, p. 5 (holding that, since "[t]he District of Columbia's ties to this case are minimal, while [the transferee district's] interests are considerable," "[t]he plaintiff's choice of forum therefore carries little, if any, weight and is insufficient to overcome the factors that weigh in favor of transfer"); *McKelvey*, Attachment D to Exhibit 3, at p. 3 ("Because [plaintiff] does not reside here and the District of Columbia has no factual nexus to this case, [plaintiff's] choice of forum is given little deference."). Plaintiffs do not reside in the District of Columbia and none of the events giving rise to plaintiff Elaine Cody's alleged injuries occurred in the District of Columbia. Therefore, plaintiffs' chosen forum is not entitled to deference.[2]

_____

[2]    To the extent that plaintiffs assert a connection to the District of Columbia based on regulatory action by the FDA in the District of Columbia, courts in the District of Columbia have rejected governmental contacts as a basis for venue. *See In re AT&T Access Charge Litig.,* No. 05-1360, 2005 WL 3274561, at *3 (D.D.C. Nov. 16, 2005)

**D.     Transferring This Action to the District Of Massachusetts Is in the Interest Of Justice**

Lastly, the transfer of this action to the District of Massachusetts is in the interest of justice. In *Pain v. United Technologies Corp.*, 637 F.2d 775, 782 (D.C. Cir. 1980), the Court of Appeals for this Circuit held that in weighing the public interest, courts should consider: (1) the local interest in having localized controversies tried at home; (2) holding the trial in a court whose state's law will govern the case; (3) not imposing jury duty upon the people of a community that has no relation to the litigation; and (4) the administrative difficulties flowing from court congestion. All of these factors favor transfer to the District of Massachusetts.

First, Massachusetts has a strong interest in seeing that the product-liability claims of Massachusetts residents are tried in Massachusetts. On the other hand, the District of Columbia has no interest in having cases tried in the District of Columbia between non-resident plaintiffs and a non-resident defendant.

The second factor favors transfer to the District of Massachusetts because Massachusetts's law will likely apply. Under the District of Columbia governmental interests choice-of-law analysis, a court must consider four factors to determine which state's substantive law applies: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of

---

(Huvelle, J.) (holding that accepting governmental contacts in D.C. as a basis for venue "would amount to an open invitation to litigants to sue private parties in this jurisdiction whenever the case has some relationship to an agency action"); *see also DeLoach v. Philip Morris Co.,* 132 F. Supp. 2d 22 (D.D.C. 2000); *Cameron v. Thornburgh,* 983 F.2d 253, 256 (D.C. Cir. 1993). Indeed, in *Thompson, Abramson,* and *Lentz,* this Court rejected the argument that FDA regulatory action regarding DES established a connection between DES lawsuits and the District of Columbia. *See Thompson,* Attachment B to Exhibit 3, p. 5; *Abramson,* Attachment C to Exhibit 3, p. 4 n.6; *Lentz,* Attachment A to Exhibit 3, p. 4. Moreover, in both *Thompson* and *Abramson,* the Court also rejected Lilly's previous filing of a lawsuit in the District of Columbia as determinative of a motion to transfer. *See Thompson,* Attachment B to Exhibit 3, p. 5; *Abramson,* Attachment C to Exhibit 3, p. 3.

8

business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Herbert v. District of Columbia*, 808 A.2d 776, 779 (D.C. 2002). As evident from the facts discussed above, each of these factors supports the application of Massachusetts law; indeed, not a single factor supports the application of District of Columbia law. *See Thompson*, Attachment B to Exhibit 3, p. 5 n.5 (finding under similar facts, that the District of Columbia choice of law analysis "would seemingly compel this court to apply Massachusetts law").

The third factor also favors transfer to Massachusetts because it is inequitable to saddle the District of Columbia and its jurors with the burden of disposing of an action that has no connection whatsoever to the forum. As this Court noted in *Thompson*, the District of Columbia's court calendar is "quite congested" and there is no reason that the district court within the state where the witnesses were located and the events surrounding the allegations occurred could not adequately resolve the case. *See Thompson*, Attachment B to Exhibit 3, p. 4 n.4. Similarly, in *Abramson*, this Court held that "given the very minimal connection of this lawsuit to the District of Columbia, it does not seem appropriate to burden this jurisdiction and its limited resources, or even Magistrate Judge Kay, with this case."[3] *Abramson*, Attachment C to Exhibit 3, pp. 4-5.

In light of these factors, transfer to the District of Massachusetts is in the interest of justice, and accordingly, transfer is appropriate.

## E.    This Court Has Transferred Other Similar Cases

As indicated throughout, this Court has previously transferred other DES cases with similar facts. In *Thompson*, this Court granted Lilly's Motion to Transfer a DES case from

---

[3]    As the Court noted, Magistrate Kay's experience mediating DES cases is not a sufficient reason to keep a case in the District of Columbia that should be transferred to another court for the convenience of the parties and witnesses and in the interest of justice. *See also Thompson*, Attachment B to Exhibit 3, p. 4 n.4 (noting that Judge Kay's experience did not warrant denial of a motion to transfer).

9

the District of Columbia to the District of Massachusetts. The Court noted that while it is "significant that Massachusetts has such strong connections to this case, equally significant is that the District of Columbia has no such connection to this matter." *See Thompson*, Attachment B to Exhibit 3, p. 5; *see also Abramson*, Attachment C to Exhibit 3, p. 2 (noting that despite previous denials of motions to transfer in DES cases, transfer is appropriate where there is a strong connection to a particular jurisdiction and no connection to the District of Columbia); *Lentz*, Attachment A to Exhibit 3, p. 4 (holding that Lilly's contacts in the District of Columbia "do not tip the balance in favor of maintaining this case in the District of Columbia, particularly when compared with the nucleus of facts, witnesses, and documents located" in another jurisdiction).

In both *Thompson* and *Abramson*, this Court distinguished earlier decisions denying Lilly's motions to transfer DES cases out of the District of Columbia. For example, in *Thompson*, the Court noted that *Thompson* was "clearly distinguishable" from *Ingram v. Eli Lilly and Co.*, 251 F. Supp. 2d 1 (D.D.C. 2003), because the witnesses in *Ingram* were no longer in Washington state, where plaintiff was exposed to DES, but were instead spread throughout the country. *Thompson*, Attachment B to Exhibit 3, p. 6. Similarly, in *Abramson*, Judge Bates distinguished other cases and granted a motion to transfer, noting that "[u]nlike many of the other DES cases, where relevant witnesses are spread around the country (even in the District of Columbia), this is a case with a single forum that is plainly most convenient for the witnesses." *Abramson*, Attachment C to Exhibit 3, p. 4. Here, the witnesses are not spread throughout the country. Rather, they are in Massachusetts, where Lilly seeks to transfer this action.

10

CONCLUSION

Lilly respectfully requests that the Court transfer this action to the United States

District Court for the District of Massachusetts pursuant to 28 U.S.C. Section 1404(a) "[f]or the

convenience of parties and witnesses, in the interest of justice."

Respectfully submitted,

SHOOK, HARDY & BACON, L.L.P

/s/ John Chadwick Coots
Michelle R. Mangrum, D.C. Bar No. 473634
John Chadwick Coots, D.C. Bar No. 461979
600 14TH Street, N.W., Suite 800
Washington, DC 20005-2004
Phone: (202) 783-8400
Fax: (202) 783-4211

and

David W. Brooks
SHOOK, HARDY & BACON, LLP
2555 Grand Boulevard
Kansas City, MO 64108
Phone: (816) 474-6550
Fax: (816) 421-5547

**ATTORNEYS FOR DEFENDANT
ELI LILLY AND COMPANY**

11

145713v5

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, this 22nd day of February, 2008, which sent notification of such filing to all counsel of record listed below.

Aaron M. Levine
Aaron M. Levine & Associates
1320 19th St., N.W., Suite 500
Washington, DC 20036

**Attorneys for Plaintiffs**

_/s/ John Chadwick Coots_____
**ATTORNEY FOR DEFENDANT
ELI LILLY AND COMPANY**

12

145713v5

**EXHIBIT 1**



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELAINE CODY and          )
DAVID CODY,              )
                        )
        Plaintiffs,      )
                        )
    v.                   )          Civil Action No. 1:07-cv-01887 (JR/AK)
                        )
ELI LILLY AND COMPANY,   )
                        )
        Defendant.       )

## PLAINTIFF ELAINE CODY'S ANSWERS TO DEFENDANT
## ELI LILLY AND COMPANY'S FIRST SET OF INTERROGATORIES

1.      Please state your present name, date and place of birth, Social Security Number, and all other names you have used or been known by, including the period during which you were known by such other names.

ANSWER:   Name: Elaine Marie Cody; Date of Birth: 1/20/69; Place of Birth: Boston

Lying-In Hospital, Boston, MA; Social Security No.: 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; Prior Name: Elaine Marie

Maguire (1/20/69 - 9/9/95).

2.      Please state in chronological order the full address for each residence at which you have resided for a period of thirty (30) days or more, and state the date each such residency was commenced and terminated.

ANSWER:   To the best of Plaintiff's recollection:

a.      386 Highland Avenue
        Randolph, MA 02368
        (Birth to September 1991)

b.      Russell Sage College
        Troy, NY 12180
        (School Year - September 1987 to May 1991)

c.      Beale Street
        Quincy, MA 02169
        (September 1991 to September 1992)

    d.      25 West Street
            Randolph, MA 02368
            (September 1992 to June 1994)

    e.      225 Valley Road
            Plymouth, MA 02360
            (June 1994 to May 1995)

    f.      38 Spinnaker Lane
            Pocasset, MA 02559
            (May 1995 to Present)

3.      Please state whether you have ever been married and, if so, for each marriage identify the full name and present address of your spouse, the date and place of marriage and the date, place and manner of the termination of any such marriage, including the date, place and court where any divorce or dissolution was granted.

**ANSWER:**   David S. Cody; Address: 38 Spinnaker Lane, Pocasset, MA 02559; Date

of Marriage: 9/9/95; Place of Marriage: St. Mary's Church, Randolph, MA.

4.      Please state your educational background including colleges attended, years of such attendance and any degrees or diplomas obtained from such colleges.

**ANSWER:**   Russell Sage College (1987 - 1991), Troy, NY 12180; Degree Obtained:

B.S. Physical Therapy.

5.      Please state the name and address of your present and past employers and/or any periods of self-employment, including the job title, nature of duties, length or period of employment or self-employment, average monthly earnings and reason for leaving employ of each such employer or period of self-employment.

**ANSWER:**   Plaintiff objects to this Interrogatory as irrelevant as there is no claim for

loss of earnings at this time. Without waiving said objection, Plaintiff submits the following:

    a.      Beth Israel Deaconess Medical Center
            330 Brookline Avenue
            Boston, MA 02215
            (September 1991 to May 1994)

    b.      Colonial Care Certified
            205 Worcester Center
            Suite 4B

Falmouth, MA 02540
(June 1994 to June 1995)

    c.    JML Care Center
           184 Ter Heun
           Falmouth, MA 02540
           (August 1994 to Present)

    d.    Rehabilitation Hospital of the Cape and Islands
           311 Service Road
           East Sandwich, MA 02537
           (March 2007 to Present)

6. Except for the present lawsuit, if you ever made any claim or filed any lawsuit for personal injury or disability, please provide details, including the approximate date each such claim or other lawsuit was filed; the nature of your claimed injury, disability or condition; the name and address of each person, firm or corporation against whom such claim or suit was made or filed; the amount received by way of settlement, payment or judgment for each such claim or suit; the approximate date, location and circumstances of the occurrence causing any injury, disease or disability for each such suit or claim; and the name and address of the court, commission or other body before which such claim or suit was filed, if any, and the number assigned to each such claim or suit.

**ANSWER:**   Not applicable.

7. Please state the name and address of each physician or other health care provider who has treated you for <u>any</u> reason which you do <u>not</u> attribute to your alleged exposure to the diethylstilbestrol (DES) referred to in your Complaint, including the nature, date, location, of any such treatment, the name and address of each hospital, clinic or other health care facility where you were confined, treated or examined, and the dates of such confinement, treatment or examination.

**ANSWER:**   Plaintiff objects to this Interrogatory as overly broad, burdensome,

irrelevant, nor will it lead to the discovery of any relevant information pertaining to Plaintiff's

claims. In addition, Plaintiff objects to any health care provider not relevant to her

gynecological or associated conditions. Without waiving said objections and to the best of

Plaintiff's recollection, she submits the following:

    a.    Leah N. Zartarian, M.D.
           332 Gifford Street
           Falmouth, MA 02540

(Family Practice 2004 - Present)

b.    Horowitz & Weiner
      Address Unknown
      Randolph, MA
      (Pediatrics 1969 - 1987)

c.    Elof Eriksson, M.D.
      Brigham and Women's Hospital
      75 Francis Street
      Boston, MA 02115
      (Plastic Surgery 1993)

This Answer may be supplemented as discovery progresses.

8.    In regard to your menstrual history, please state your age at the onset of menstruation, whether menstruation was regular, and if not, describe such irregularities as well as any cramping, fainting, dizzy spells, or any other difficulties with menstruation (such as excessive or prolonged flow), and if you have consulted a physician or other health care provider regarding any of these irregularities or difficulties, please state the name and address of the physician, the approximate dates consulted and the reason for any such consultation, examination or treatment.

**ANSWER:**    Plaintiff's age at menarche was approximately age 14.  Her menstruation is currently regular.  Plaintiff was evaluated in January 2004 by Janis Fox, M.D., Center for Reproductive Medicine, 1032 Main Street, South Weymouth, MA 02190 for dysfunctional uterine bleeding following her miscarriage in May 2003.

9.    If you have ever attempted to become pregnant, but been unable to conceive, please state the number of months or years (give approximate dates) you were unable to conceive, and the name and address of any physician or other health care provider consulted and the date(s) of each consultation.

**ANSWER:**    Plaintiff started attempting pregnancy in approximately January 1999.  She first consulted Juliann Corsini, M.D., Plymouth OB-GYN Associates, Inc., 110 Long Pond Road, Suite 101, Plymouth, MA 02360 on 6/10/99 for her inability to conceive.

10.    If you have ever been pregnant, please state the number of months or years you attempted to conceive before becoming pregnant and the approximate date of conception; the date of termination of the pregnancy and the result (e.g., childbirth, miscarriage, spontaneous

abortion, therapeutic abortion, etc.); the name and address of each physician or other health care provider consulted during the pregnancy; the name and address of the physician or other health care provider attending the birth (or abortion); the name and address of the hospital where each child was born (or each pregnancy, miscarried or aborted); if the pregnancy resulted in the birth of a child, the name and address of each child; whether the child had any birth defects or inherited diseases/disorders and, if so, the nature of each such birth defect, disease or disorder; whether each child is now deceased and, if so, the date, place, and cause of each child's death.

    **ANSWER:**   Plaintiff has had six pregnancies as follows:

a.     Attempted pregnancy from January 1999 to January 2000. LMP 12/25/99. Premature birth of Paul David Cody on 7/2/00. Delivery Hospital: Jordan Hospital, 275 Sandwich Street, Plymouth, MA 02360. Providers: Janis Fox, M.D. (Reproductive Endocrinologist); Juliann Corsini, M.D. (Obstetrician); Sidney Nirenberg, M.D. of Plymouth OB-GYN Associates, Inc. (Birth Attendant). Present Address: 38 Spinnaker Lane, Pocasset, MA 02559. Major Illnesses, Diseases, and/or Conditions: Recurrent Severe Croup; Cystic Fibrosis Carrier;

b.     Attempted pregnancy x5 months in 2001. LMP 11/4/01. Left ectopic pregnancy on 12/12/01, requiring D&E, laparoscopy, and laparoscopic left linear salpingostomy at Tufts-New England Medical Center, 750 Washington Street, Boston, MA 02111. Provider: Raymond Lui, M.D. (Surgeon), Tufts-New England Medical Center, 750 Washington Street, Box 22, Boston, MA 02111;

c.     Attempted pregnancy x7 months in 2002. LMP 8/3/02. Left ectopic pregnancy on 9/7/02, requiring exam under anesthesia, diagnostic laparoscopy, mini laparotomy, and left salpingectomy at South Shore Hospital, 55 Fogg Road, South Weymouth, MA 02190. Provider: Christo J. Shakr, M.D. (Surgeon), 300 Congress Street, Quincy, MA 02169;

d.     Attempted pregnancy x3 months in 2002. LMP 11/23/02. Miscarriage 1/03. Provider: Janis Fox, M.D.;

e.     Attempted pregnancy x4 months in 2003. LMP 4/1/03. Miscarriage 5/22/03. Provider: Janis Fox, M.D.;

f.     Attempted pregnancy from approximately June 2003 to October 2005. LMP unknown. Miscarriage 11/05. Provider: Janis Fox, M.D.

    11.    Please state the inclusive dates of your mother's pregnancy with you, your mother's and father's names as of your date of birth, your mother's address during her pregnancy with you, the name and address of the doctor and/or other persons who delivered you, the name and address of the hospital or other place where you were delivered, including a description of the location if not delivered in a hospital.

**ANSWER:**     Inclusive Dates of Pregnancy: Approximately 4/68 - 1/20/69; Parents'

Names: Nora Maguire and Paul Maguire; Mother's Address During Pregnancy: 386 Highland

Avenue, Randolph, MA 02368; Birth Attendant: William Mulligan, M.D.; Hospital: Boston

Lying-In Hospital, Boston, MA.

12.     Please list the names of all drugs and medications used by you within the last ten
(10) years, including, but not limited to, antibiotics, contraceptives, tranquilizers, sleeping pills,
antihypertensives, diet aids or hormones; the inclusive dates each such drug or medication was
used; the purpose for which each such drug or medication was used; and the name of the
physician or other health care provider, if any, who prescribed such drug or medication for your
use.

**ANSWER:**     Plaintiff objects to this Interrogatory as overly broad and burdensome, nor

will it lead to the discovery of information relevant to her claim.  The only relevant hormone

Plaintiff has been exposed to is the DES she was exposed to in utero.  Without waiving said

objections, at the present time, Plaintiff is unable to recall any additional medications used other

than those identified in her medical records and reports produced in response to Defendant's

First Request for Production of Documents or Tangible Things.   This Answer may be

supplemented as discovery progresses.

13.     Please describe with specificity the injuries, disabilities and/or conditions which
you allege to have resulted from your alleged exposure to the drug identified in your Complaint,
including any complaints of injury, disability, or condition which have now subsided and when
you last had those complaints, and if you are claiming any aggravation of any injury, disability,
or condition, describe such condition, and the manner in which you claim such condition was
aggravated by your alleged exposure to the drug identified in the Complaint.

**ANSWER:**

a.     T-shaped uterus, diagnosed on 7/18/07, by Brian M. Berger, M.D., Boston IVF,
The South Shore Center, 2300 Crown Colony Drive, Quincy, MA 02169;

b.     Infertility, requiring ART techniques, 1999 - present, by Janis Fox, M.D. and
Brian M. Berger, M.D.;

c.     Premature delivery at 27 weeks' gestation on 7/2/00;

d.     Left ectopic pregnancy, diagnosed on 12/12/01, by Raymond Lui, M.D.;

e.     Left ectopic pregnancy, diagnosed on 9/7/02, by Christo J. Shakr, M.D.;

f.     Miscarriage, diagnosed January 2003, by Janis Fox, M.D.;

g.     Miscarriage, diagnosed 5/22/03, by Janis Fox, M.D.;

h.     Miscarriage, diagnosed November 2005, by Janis Fox, M.D.;

i.     Anxiety and terror regarding future adverse pregnancy outcomes;

j.     Anger and resentment that reproductive potential is damaged;

k.     Depression; and

l.     Relationship with spouse complicated by anger, resentment, and disappointment.

Plaintiff reserves the right to supplement this Answer as discovery progresses.

14.     If you have been confined, examined, x-rayed or treated in any hospital or clinic or physician's office or have consulted any physician or other health care provider as a result of any injury, disability, or condition which you allege to have resulted from your alleged exposure to the drug identified in your Complaint, please state the name and address of each such hospital or clinic or office, the name and address of each treating physician or other health care provider, and the nature of the treatment received by you, including the date of each such confinement, examination, x-ray or treatment.

**ANSWER:**     To the best of Plaintiff's recollection:

a.     Brian M. Berger, M.D.
       Boston IVF
       The South Shore Center
       2300 Crown Colony Drive
       Quincy, MA 02169
       (Reproductive Endocrinology July 2007 - Present)

b.     Mass General West Imaging
       The PARC Center
       40 Second Avenue
       Suite 100
       Waltham, MA 02451
       (Hysterosalpingogram 7/18/07)

c.     Lucia C. McNabb, M.D.

                     100 Independence Drive
Suite 102
Hyannis, MA 02601
(Gynecology September 2006 - Present)

d.      Janis Fox, M.D., Elizabeth Ginsburg, M.D., Brian Walsh, M.D., Elena Yanushpolsky, M.D.
Center for Reproductive Medicine
1032 Main Street
South Weymouth, MA 02190
(Reproductive Endocrinology 1999 - 2005)

e.      South Shore Hospital
55 Fogg Road
South Weymouth, MA 02190
(ER Visits 12/10/01, 9/6/02, 1/3/03; Left Salpingectomy 9/7/02; MRI 3/15/04; Hysteroscopy 8/8/05; Various Ultrasound Procedures 1999 - 2005)

f.      Claudio M. Delise, M.D.
South Shore Midwifery & OB/GYN, P.C.
851 Main Street
Suite 4
South Weymouth, MA 02190
(Gynecology 2002 - 2004)

g.      Raymond Lui, M.D.
Tufts-New England Medical Center
750 Washington Street, Box 22
Boston, MA 02111
(Obstetrics-Gynecology 12/12/01)

h.      Tufts-New England Medical Center
750 Washington Street
Boston, MA 02111
(Hysterosalpingograms 11/14/01, 3/25/02; Left Linear Salpingostomy 12/12/01)

i.      Teresa Marino, M.D.
Tufts-New England Medical Center
750 Washington Street, Box 360
Boston, MA 02111
(Maternal-Fetal Medicine 2001)

j.      Andrea L. Zuckerman, M.D.
Tufts-New England Medical Center
750 Washington Street, Box 022

Boston, MA 02111
(Obstetrics-Gynecology 2000 - 2002)

k.     Juliann Corsini, M.D., Sidney Nirenberg, M.D., Karen Toujouse, M.D., Michelle
Cahill, PA-C
Plymouth OB-GYN Associates, Inc.
Long Pond Medical Building
110 Long Pond Road
Plymouth, MA 02360
(Obstetrics-Gynecology 1995 - 2000)

l.     Jordan Hospital
275 Sandwich Street
Plymouth, MA 02360
(Hysterosalpingogram 8/6/99; Premature Delivery 7/2/00)

m.     Christo J. Shakr, M.D.
300 Congress Street
Quincy, MA 02169
(Obstetrics-Gynecology 9/7/02)

In addition, see Plaintiff's medical records and reports produced in response to

Defendant's First Request for Production of Documents or Tangible Things.

15.     Please itemize any and all special damages you claim to have incurred as a result
of your alleged exposure to the drug identified in your Complaint, including but not limited to,
doctor and hospital bills, prescription bills, counseling services, nursing services, and other
employed help, including the name and address of the person or company performing the
service, the amount of each bill and the nature of the services rendered.

**ANSWER:**     A listing of Plaintiff's special damages will be provided upon receipt and

compilation.

16.     If you are claiming any loss of income or earnings as a result of any injuries,
disabilities or conditions attributed to your alleged exposure to the drug identified in your
Complaint, please state the total amount claimed, the dates of employment missed and the
reasons therefor; and for the last 5 years in which you filed federal income tax returns, state as to
each return filed, your name as it appeared on the federal return, whether the return was a joint
return, and the name of your spouse as it appeared on the return if a joint return was filed, and
your address as it appeared on the return.

**ANSWER:**     Plaintiff is not currently making a claim for loss of income or earnings.

Plaintiff reserves the right to supplement or amend this Answer as discovery progresses.

17.    As to your mother, please state her current full name, maiden name, and any other names used; her date and place of birth; her present address if living, the date and cause of death if deceased; all residences at which your mother lived for a period of more than thirty (30) days since her pregnancy with you was diagnosed; any and all major illnesses, diseases and/or conditions your mother has or has had and the approximate dates of such illness, disease, and/or condition; the approximate date of each of your mother's pregnancies; the outcome of each of your mother's pregnancies; what drugs, including diethylstilbestrol (DES), were administered in each of your mother's pregnancies; any medical problems developed during your mother's pregnancies; the name and address of each physician or other health care provider your mother consulted during each pregnancy; the name and address of the hospital or clinic where your mother was confined during each such pregnancy; your mother's present marital status and, if married, the name and address of her spouse.

**ANSWER:**    Mother's Name: Nora Patricia Maguire; Maiden Name: Hanlon; Date of Birth: 3/1/34; Place of Birth: Galway, Ireland; Present Address: 386 Highland Avenue, Randolph, MA 02368 (November 1967 - Present); Mother's Major Illnesses, Diseases, and/or Conditions: None. Plaintiff's mother has had two pregnancies as follows:

(1)    See Plaintiff's Answer to Interrogatory No. 11. Cesarean section performed for cephalopelvic disproportion. Providers: William Mulligan, M.D. and Francis Boudreau, M.D. Medications: Folic Acid; DES prescribed for staining early in this pregnancy.

(2)    LMP approximately 1/70. Live birth of male on 10/8/70. Cesarean section performed for cephalopelvic disproportion. Providers: William Mulligan, M.D. and Francis Boudreau, M.D., Boston Lying-In Hospital, Boston, MA. Medications: Folic Acid.

Marital Status: Widowed.

18.    As to your father, please state his full name; his place and date of birth; his present address if living, the date and cause of death if deceased; all residences at which your father lived for a period of more than thirty (30) days since the date of your birth; all major illnesses, diseases and/or conditions which your father has or has had and the approximate dates of such illness, disease and/or condition; his present marital status and, if married, the name and address of his spouse.

**ANSWER:**    Father's Name: Paul Maguire; Place of Birth: Boston, MA; Date of Birth: 11/19/31; Date of Death: 10/24/05; Cause of Death: Heart Attack; Prior Address: 386 Highland

Avenue, Randolph, MA 02368 (November 1967 - October 2005); Father's Major Illnesses, Diseases, and/or Conditions: Heart Disease, Renal Failure, Chronic Obstructive Pulmonary Disease.

19.    As to your brothers and sisters, please state their names at birth; their present names if different from their names at birth and any other names used; their present addresses if living, the date and cause of their deaths if deceased; all major illnesses, diseases and/or conditions which each has or has had and the dates of each such illness, disease and/or condition; the date of each of their births and their relationship to you (natural brother, step-sister, adopted, etc.).

**ANSWER:**    Natural Brother: Michael Maguire; Address: 16 Wales Avenue, Randolph,

MA 02368; Major Illnesses, Diseases, and/or Conditions: None; Date of Birth: 10/8/70.

20.    As to your allegation that your mother ingested diethylstilbestrol (DES) during her pregnancy with you, and that such diethylstilbestrol (DES) was manufactured by Lilly, please state all dates when diethylstilbestrol (DES) was prescribed for your mother, the names and addresses of each physician who prescribed diethylstilbestrol (DES) for your mother, the names and addresses of all pharmacies, physician's offices, hospitals, clinics or other places at which your mother obtained diethylstilbestrol (DES) or it was obtained for her, the name and address of each person known to you or your representatives who has knowledge of facts which support such allegations and please identify each fact and each document which support such allegations.

**ANSWER:**

a.    DES was prescribed from early pregnancy.

b.    William Mulligan, M.D., now deceased.

c.    Plaintiff's mother recalls filling her DES prescription at Drug Fair in Randolph, MA. See Statements of James Grobman and Steven Baker attached in response to Defendant's First Request for Production of Documents or Tangible Things.

21.    Describe in detail the physical appearance of the diethylstilbestrol you allege your mother ingested, including its form (for example, pill, injection, capsule), the shape, color, or size of any pill, tablet or capsule, the dosage of the DES your mother took, the number of times it was taken per day, and any markings that may have appeared on the product.

**ANSWER:**    Pill form. This Answer may be supplemented as discovery progresses.

22.    Please state the date on which you first believed that your mother took DES

during her pregnancy with you, the date you first discovered any injury you claim to be due to your exposure to DES, and the date you first believed that DES manufacturers in general or any DES manufacturer in particular acted in any way wrongly, negligently, or tortiously in the manufacture or distribution of DES or in the warning about the use of DES.

**ANSWER:**

a.    Plaintiff learned from her mother in approximately 1987 that she was exposed to DES in utero.

b.    Plaintiff contacted her current attorneys in 2002. The medical records reviewed at that time reflected three normal hysterosalpingograms. The case was rejected for lack of injury. The first diagnosis of a DES-related injury (T-shaped uterus) occurred in July 2007 by Dr. Brian Berger.

23.    For each document, letter, written statement, memorandum or other written material from Lilly that you, your attorneys or other representatives may have, please state the exact description of each such item, the date appearing on each such item, the location where each such item was obtained, the name and address of the person to whom such written material was directed, the name and address of the person who obtained each such item, the name and address of the person who provided each such item and the name and address of the person known to Plaintiff to have custody of the written material.

**ANSWER:**    My attorneys possess DES materials including labeling, A-forms, brochures, warnings, promotional literature, as well as state of the art literature.

24.    If you ever received, or if you have in your possession any documents, correspondence or publications from the national DESAD Project or any DES Action organization please identify each such document, item of correspondence, or publication and indicate the date you received each such item and the source of each such item; and if not provided by the above-named organizations, please state the name and address of the person who gave you the item.

**ANSWER:**    Plaintiff does not currently possess any documents, correspondence, or publications from the national DESAD Project or any DES Action organization.

25.    Please identify all other persons having personal knowledge of any of the facts bearing on your claim, and for each such person state his or her address, telephone number and relationship to you, if any.

**ANSWER:**    None, other than any of the aforementioned persons. Plaintiff reserves the right to supplement this Answer as discovery progresses.

The information contained in these requests as well as the word usage, sentence structure and opinions, are not solely that of the declarant, rather they are the product of counsel in preparation with declarant.

I SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTY OF PERJURY THAT THE INFORMATION CONTAINED IN THE FOREGOING ANSWERS TO INTERROGATORIES ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

Dated: 1-16-08

ELAINE CODY, Declarant

AARON M. LEVINE & ASSOCIATES

Aaron M. Levine, #7864
1320 19th Street, N.W.
Suite 500
Washington, D.C. 20036
(202) 833-8040

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 18th day of January, 2008, a true and correct copy of the foregoing Plaintiff Elaine Cody's Answers to Defendant Eli Lilly and Company's First Set of Interrogatories was served via first class, postage prepaid, U.S. Mail, on counsel for Defendant:

Ericka L. Kleiman, Esq.
SHOOK, HARDY & BACON L.L.P.
600 14th Street, N.W.
Suite 800
Washington, D.C. 20005-2004

                                         Aaron M. Levine

**EXHIBIT 2**



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELAINE CODY and              )
DAVID CODY,                  )
                             )
        Plaintiffs,          )
                             )
    v.                       )        Civil Action No. 1:07-cv-01887 (JR/AK)
                             )
ELI LILLY AND COMPANY,       )
                             )
        Defendant.           )

**PLAINTIFF DAVID CODY'S ANSWERS TO DEFENDANT
ELI LILLY AND COMPANY'S FIRST SET OF INTERROGATORIES**

     1.    Please state your present name, date and place of birth, Social Security Number, all other names you have used or been known by, the period during which you were known by such other names, your educational background including colleges attended, years of such attendance and any degrees or diplomas obtained from such colleges, your present address and all other residence addresses, in chronological order, at which you have lived for a period of thirty (30) days or more, including the dates each such residency was commenced and terminated.

     **ANSWER:**   Name: David Stephen Cody; Date of Birth: 1/15/69; Place of Birth: Boston, MA; Social Security No.: 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; Other Names: None; Education: Northeastern University, Boston, MA; Degrees Obtained: B.S. Health Management (May 2007), A.S. Paramedic Technology (May 1998); Present Address: 38 Spinnaker Lane, Pocasset, MA 02559 (May 1995 - Present); Prior Addresses:

     a.     2 Meadowlark Lane
                Sagamore Beach, MA 02562
                (February 1994 - May 1995; September 1989 - February 1992)

     b.     196 Commercial Street
                Braintree, MA 02184
                (February 1992 - February 1994)

     c.     24 Amelian Road
                Randolph, MA 02368

(January 1969 - September 1989)

    2.    Please state whether you have been married, and if so, for each marriage, state the full name and present address of each spouse, the date and place of each marriage, and the reason for termination of each marriage, including the date, place and court where any divorce or dissolution was granted.

    **ANSWER:**  Elaine Marie Cody; Address: 38 Spinnaker Lane, Pocasset, MA 02559;

Date of Marriage: 9/9/95; Place of Marriage: St. Mary's Church, Randolph, MA.

    3.    Please state in chronological order, for each employment or self-employment you have had for the last ten (10) years, the job title and the nature of the duties; the name and address of your employer and immediate supervisor; the dates of employment in this position or self-employment; the average net monthly earnings; and the reason for leaving each such employment or self-employment.

    **ANSWER:**  Plaintiff objects to this Interrogatory as irrelevant as there is no claim for

loss of wages for David Cody at this time.

    4.    If you have ever been a member of any branch of the Armed Forces of the United States, please state the period of your service and the branch of service, your service or serial number, each training or duty station to which you were assigned and the dates of each such assignment, and if you have ever claimed or received benefits from the Veterans Administration by reason of injury or disability, then please give your Veterans Administration claim number and the nature of your disability or injury.

    **ANSWER:**

    a.    U.S. Coast Guard Reserve (1986 - 1994)

        Service Number: 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

        Duty Stations: U.S. Coast Guard Training Center, Cape May, NJ (6/86 - 8/86); U.S. Coast Guard Reserve Training Center, Yorktown, VA (5/87 - 8/87)

    b.    U.S. Naval Reserve (1996 - 1999)

        Service Number: 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

        Duty Station: 1st Battalion, 25th Marines, 4th Marine Corps Division, Massachusetts Military Reservation, Camp Edwards

    5.    If you have ever been convicted of or pleaded guilty to a felony, give the date,

place, court and the nature of each such offense.

      **ANSWER:**   Not applicable.

      6.    If you or anyone on your behalf has made any written application for employment or for any policy of insurance upon your life or for medical or hospital benefits or income continuation, please state the approximate date of each such application, the name and address of each company to which you made such application, and the name and address of each physician or other health care provider who examined you in connection with any such application and the approximate date thereof.

      **ANSWER:**   Plaintiff objects to this Interrogatory as overly broad, burdensome,

irrelevant, nor will it lead to any relevant discoverable evidence.   Without waiving said

objections, Plaintiff submits that his health insurance is presently provided by Blue Cross & Blue

Shield of Massachusetts.

      7.    Except for the present lawsuit, if you have ever made a claim or filed a lawsuit for personal injury or disability, please state the approximate date each claim or lawsuit was filed, the nature of your claimed injury, disability or condition; the name and address of each person, firm, or corporation against whom such claim or suit was made or filed, the amount received by way of settlement, payment or judgment for each such claim or suit; the approximate date, location and circumstances of the occurrence causing any injury, disease or disability for each claim or suit; and the name and address of the court, commission or other body before which such claim or suit was filed, if any, and the number assigned to each such claim or suit.

      **ANSWER:**

      a.    Date of Claim: Approximately 1993;

      b.    Personal injury from assault and battery;

      c.    Defendant: Stocks and Bonds Nightclub;

      d.    Settlement Amount: None received;

      e.    Date of Occurrence: March 1991;

      f.    Location of Occurrence: Boston, MA;

      g.    Suffolk County District Court.

      8.    If you have suffered any injury, disease, infection or condition affecting your

reproductive organs (including, but not limited to, venereal disease, sexually transmitted disease, venereal warts, mumps, discharge, urethritis, prostatitis, urethral stenosis, scrotal swelling or tenderness, painful urination, undescended testicle(s), hypospadias, microphallus, hypoplastic testes, epididymal cysts, varicoceles, or semen/sperm abnormalities), please state the nature of the disease, infection, injury, or condition; the treatment given; the name and address of each physician or other health care provider who treated you and the dates of such treatment; the name and address of each hospital or clinic where you were confined, treated or examined; and the dates of such confinement, treatment or examination.

ANSWER:     Not applicable.

9.     Please list any drugs or medications used over the last ten (10) years, either prescription or over-the-counter products, including, but not limited to, hormones, tranquilizers, sleeping pills, antihypertensives, diet aids or antibiotics, and as to each, please state the reasons for and inclusive dates for use, and the name and address of each physician or other health care provider who advised you to use each such product.

ANSWER:     Plaintiff objects to this Interrogatory as overly broad and burdensome, nor

will it lead to the discovery of information relevant to Plaintiff's claims.  The only relevant drug

or medication pertaining to Plaintiff's claims is the DES his wife was exposed to in utero.

10.     If you have ever been married to anyone other than your current wife, for each wife, please state if she ever attempted to become pregnant, but was unable to conceive, and if so, for how many months or years (give approximate dates) she was unable to conceive, and the name and address of any physician or other health care provider consulted by each wife about her inability to conceive and the date(s) consulted.

ANSWER:     Not applicable.

11.     As to any of your children, please state the name, sex and date of birth of each living child, whether the child had a congenital abnormality (i.e., birth defect); the name and address of the doctor attending each birth; the name and address of the hospital where each child was born; the name, sex and date of birth of each child born to you who is now deceased, including the date, place and cause of death, the name and address of the mother of any child if other than your present wife; and the name, sex and date of birth of each adopted child if not provided above.

ANSWER:

a.     Paul David Cody, male, born 7/2/00; Delivery Hospital: Jordan Hospital, 275 Sandwich Street, Plymouth, MA 02360; Birth Attendant: Sidney Nirenberg, M.D., Plymouth OB-GYN Associates, Inc., 110 Long Pond Road, Suite 101, Plymouth, MA 02360;

     b.      Leah Svetlana Cody (adopted), female, born 1/8/03, Sevastopol, Ukraine.

     12.     If you have been confined, examined or treated in any hospital or clinic, please state the name and address of each such hospital or clinic, the name and address of each treating physician or other health care provider, and the nature and date(s) of any treatment received by you.

     **ANSWER:**   Plaintiff objects to this Interrogatory as overly broad, burdensome, irrelevant, nor will it lead to any relevant discoverable evidence.   Without waiving said objections, Plaintiff submits the following:

     a.      Bronchitis 1975; Admission x7 days; Brockton Hospital, Brockton, MA;

     b.      Acute Sinusitis; Admission x9 days; Cardinal Cushing General Hospital, Brockton, MA;

     c.      Right Thumb Fracture 2001; Morton Hospital, Taunton, MA; and

     d.      Left Shoulder Surgery 2005; Falmouth Hospital, Falmouth, MA.

     13.     Except for hospital or clinic treatment as set forth in the preceding interrogatory, please state the name and address of each person who has examined, treated or x-rayed you for any illness, injury, condition or disability, and the nature of the illness, injury, condition or disability for which each such person treated you and dates of any such treatment.

     **ANSWER:**   Plaintiff objects to this Interrogatory as overly broad, burdensome, irrelevant, nor will it lead to any relevant discoverable evidence.

     14.     If you have been examined for fertility problems, please state the name(s) and address(es) of each examining physician or other health care provider, the results of such examination(s), and any treatment or recommendations made concerning such problems.

     **ANSWER:**

     a.      Negative Semen Evaluation 1999; Janis Fox, M.D., Center for Reproductive Medicine, 1032 Main Street, South Weymouth, MA 02190;

     b.      Negative Semen Evaluation 2007; Brian M. Berger, M.D., Boston IVF, The South Shore Center, 2300 Crown Colony Drive, Quincy, MA 02169.

     15.     Please itemize any and all special damages you claim to have incurred as a result of your wife's alleged exposure to diethylstilbestrol (DES), including, but not limited to, doctor

and hospital bills, psychological evaluation or therapy bills, prescription bills, nursing services, and other employed help, and state the name and address of the person or company performing the service, the amount of each bill, and the dates and nature of the services rendered.

      **ANSWER:**   A listing of Plaintiff's special damages will be provided upon receipt and

compilation.

      16.   If you are claiming any loss of income or earnings as a result of any injuries, disabilities or conditions attributed to your wife's alleged exposure to diethylstilbestrol, please state the total amount claimed, the dates of employment missed and the reasons therefor; and for the last ten (10) years in which you filed federal income tax returns, state as to each return filed, your name as it appeared on the federal return, whether the return was a joint return, and the name of your spouse as it appeared on the return if a joint return was filed, and your address as it appeared on the return.

      **ANSWER:**   Plaintiff is not making a claim for loss of earnings at this time.

      17.   For each document, letter, written statement, memorandum or other written materials from Lilly that you, your attorneys or other representatives may have, please state the exact description of each such item, the date appearing on each such item, the location where each such item was obtained, the name and address of the person to whom such writing was directed, the name and address of the person who obtained or provided each such item, and the name and address of the person known to Plaintiff to have custody of the writing.

      **ANSWER:**   My attorneys possess DES materials including labeling, A-forms,

brochures, warnings, promotional literature, as well as state of the art literature.

      18.   Please state the name and address of each person you expect to call as an expert witness at the trial of this action, the subject matter on which each expert witness is expected to testify, the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each such opinion.

      **ANSWER:**   Plaintiff has not yet completed discovery, nor decided upon experts, but is

considering calling the following:

      a.   Harris Busch, M.D., Ph.D. (Deceased)

Dr. Busch was an expert in the field of Pharmacology and Toxicology. His testimony

will be offered as to state of the art. Specifically, Dr. Busch's testimony will discuss that Lilly

knew or should have known that DES was a transplacental teratogen and failed to adequately test

for the safety of DES.

      b.    Richard Falk, M.D.
              1588 Lancaster Green
              Annapolis, MD 21401

Dr. Falk is an expert in the field of Obstetrics-Gynecology and Reproductive Endocrinology, and his testimony is expected to parallel Dr. Busch's testimony as to state of the art, but will focus on the perspective of the practicing and teaching Obstetrician-Gynecologist at the time.

      c.    Brian Strom, M.D., M.P.H.
              University of Pennsylvania Medical Center
              Department of Epidemiology & Biostatistics
              824 Blockley Hall, 423 Guardian Drive
              Philadelphia, PA 19104

Dr. Strom is an expert in the field of Epidemiology and is expected to testify that Plaintiff Elaine Cody's reproductive tract and anatomic anomalies are causally related to her in utero exposure to DES and placed her at high risk for poor pregnancy outcomes, infertility, and preterm delivery.

      d.    James P. DellaVolpe
              29 Benedict Road
              Buzzards Bay, MA 02532

Mr. DellaVolpe is an expert in the field of wholesale pharmaceutical distribution, stocking, and brand popularity of DES in the 1960's. He is expected to testify, as outlined in his recent deposition, that McKesson and Robins, which was an Eli Lilly and Company wholesaler, would have provided to a pharmacy the Lilly brand for a prescription for "DES," "diethylstilbestrol," or "Stilbestrol." Mr. DellaVolpe's report, curriculum vitae, and fee for expert testimony have previously been provided.

      e.    Harold B. Sparr, R.Ph., M.S.

216 Dimmock Road
Otis, MA 01253

Mr. Sparr is an expert in pharmacy who has conducted a survey of the market share of the various DES brands sold in Massachusetts in the 1960's. He will testify, as outlined in his prior depositions, that the brand involved in this case was the Lilly brand of DES based on his experience, his study, and his research. Mr. Sparr will also testify that based on his experience, research, and interactions with pharmacists over the years from throughout the United States, that Lilly had the lion's share, if not all, of the DES market. A copy of Mr. Sparr's curriculum vitae, and fee for expert testimony have previously been provided.

    f.    Philip J. Cafferty, R.Ph. (Deceased)

Mr. Cafferty was a pharmacist and former pharmaceutical representative of Eli Lilly and Company. Based upon Mr. Cafferty's observations of drugstores and familiarity with the pharmaceutical field, it is his opinion, as outlined in his prior deposition, that Lilly had the lion's share, if not all, of the DES market.

    g.    Julius Piver, M.D.
              6602 Melody Lane
              Bethesda, MD 20817

Dr. Piver is a Board Certified Obstetrician-Gynecologist and has been engaged in the practice of Obstetrics and Gynecology since 1956. A copy of his curriculum vitae and fee for expert testimony have previously been provided. Dr. Piver's testimony, as outlined in his previously produced report and recent deposition, will focus on the standard of care and the usual and ordinary practice of Obstetrics and Gynecology in major population centers from the 1950's to date, in particular with regards to the use of diethylstilbestrol.

    h.    John J. Hefferen, Ph.D.
              303 Campfire Drive

Lawrence, KS 66049

Dr. Hefferen is an expert in the field of manufacturer/pharmaceutical identification. He is a Ph.D. in Pharmaceutical Chemistry and has been involved in research pharmaceuticals for the last 50 years. He authored a publication guide on the identification of drugs in the 1950's and 1960's and is uniquely familiar with the physical characteristics and identification of pharmaceuticals. He is expected to testify, as outlined in his previously produced report, as to the identity of Eli Lilly and Company's DES pills.

Plaintiff reserves the right to supplement this Answer as discovery progresses.

19.    Please identify all persons who have any knowledge of the facts alleged in your Complaint, such identification to include each such person's name, address, occupation and employer.

**ANSWER:**    See Elaine Cody's Answers to Defendant's First Set of Interrogatories.

Plaintiff reserves the right to supplement this Answer as discovery progresses.

20.    State the name, address and specialty of each doctor who has given you, your wife, your attorney or your representatives an opinion as to the cause of the injuries, conditions or illnesses complained of in this lawsuit, and whether such opinion was communicated orally or in writing, the substance of each such opinion, and the date each such opinion was given.

**ANSWER:**    In July 2007, Dr. Brian Berger informed Plaintiff Elaine Cody that her uterine cavity is T-shaped due to her DES exposure.

The information contained in these requests as well as the word usage, sentence structure and opinions, are not solely that of the declarant, rather they are the product of counsel in preparation with declarant.

I SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTY OF PERJURY THAT THE INFORMATION CONTAINED IN THE FOREGOING ANSWERS TO INTERROGATORIES ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

Dated: 01-17-2008

DAVID CODY, Declarant

AARON M. LEVINE & ASSOCIATES

Aaron M. Levine, #7864
1320 19th Street, N.W.
Suite 500
Washington, D.C. 20036
(202) 833-8040

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this $\underline{18^{\text{th}}}$ day of January, 2008, a true and correct copy of the foregoing Plaintiff David Cody's Answers to Defendant Eli Lilly and Company's First Set of Interrogatories was served via first class, postage prepaid, U.S. Mail, on counsel for Defendant:

Ericka L. Kleiman, Esq.
SHOOK, HARDY & BACON L.L.P.
600 14th Street, N.W.
Suite 800
Washington, D.C. 20005-2004

_____
Aaron M. Levine

**EXHIBIT 3**

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELAINE CODY and | ) | |
| DAVID CODY | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. |
| | ) | 1:07-cv-01887 (JR/AK) |
| | ) | |
| vs. | ) | |
| | ) | |
| ELI LILLY AND COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## AFFIDAVIT OF JOHN CHADWICK COOTS IN SUPPORT OF DEFENDANT ELI LILLY AND COMPANY'S MOTION TO TRANSFER

I, John Chadwick Coots, being first sworn on oath, say that the following is true and correct:

1.   I am an attorney in the firm of Shook, Hardy & Bacon, LLP, counsel for defendant Eli Lilly and Company ("Lilly") in the above-captioned action.

2.   Attachment A is a true copy of this Court's decision in *Lentz v. Eli Lilly and Company,* Civil Action No. 06-CV-1374 (D.D.C. Dec. 18, 2006) (Huvelle, J.).

3.   Attachment B is a true copy of this Court's decision in *Thompson v. Eli Lilly and Company*, Civil Action No. 03-CV-00122 (D.D.C. June 27, 2003) (Walton, J.).

4.   Attachment C is a true copy of this Court's decision in *Abramson v. Eli Lilly and Company,* Civil Action No. 03-CV-2541 (D.D.C. Oct. 25, 2004) (Bates, J.).

5.   Attachment D is a true copy of this Court's decision in *McKelvey v. Eli Lilly and Co.*, Civil Action No. 06-CV-1820 (D.D.C. Apr. 12, 2007) (Collyer, J.).

1

145819v2

Executed on February 21, 2008

_John Chadwick Coots_
John Chadwick Coots

DISTRICT OF                )
                           )ss.
COLUMBIA_____         )

On this _21_ day of February, 2008, before me, a notary public in and for said state, personally appeared John Chadwick Coots, to me personally known, who being duly sworn, acknowledged that she had executed the foregoing instrument for purposes therein mentioned and set forth.

_____
NOTARY PUBLIC

My Commission Expires:

_January 14, 2013_____

District of Columbia. SS
Subscribed and sworn to before me, in my presence,
this _21_ day of _FEBRUARY_____, _2008_
_____Alan Robert Starner_____
Notary Public, D.C.
My commission expires _JANUARY 14, 2013_

ALAN ROBERT STARNER
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires January 14, 2013

2

**Attachment A**

To

Affidavit of John Chadwick Coots in Support of
Defendant Eli Lilly and Company's Motion to Transfer


Filed in:
*Elaine Cody and David Cody v. Eli Lilly and Company*
U.S. District Court for the District of Columbia
Civil Action No. 1:07-cv-01887-JR/AK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KAREN ANNE LENTZ and )
GERALD A. LENTZ, Jr. )
)
                    Plaintiffs, )    Civil Action No. 06-1374 (ESH)
)
    v. )
)
ELI LILLY AND COMPANY, )
)
                    Defendant. )
)

MEMORANDUM OPINION AND ORDER

Plaintiffs Karen Anne and Gerald Lentz, who reside in Maine, filed this action in the

Superior Court for the District of Columbia for injuries associated with Mrs. Lentz's *in utero*

exposure to diethylstilbestrol ("DES"). Defendant Eli Lilly, an Indiana corporation, removed the

suit to this Court on the basis of diversity jurisdiction, and now moves to transfer it to the United

States District Court for the District of Maine pursuant to 28 U.S.C. § 1404(a). Defendant

argues that transfer to the District of Maine would serve the interests of justice and the

convenience of the parties because the purchase and ingestion of DES by Mrs. Lentz's mother

occurred in Maine, and the relevant medical records, as well as the key fact witnesses --

including Mrs. Lentz's mother, the doctor who prescribed DES to Mrs. Lentz's mother, and the

doctors who diagnosed and treated Mrs. Lentz's alleged injuries -- are all located in Maine.

(Def. Mot. at 1-2.) Plaintiffs state that they will voluntarily produce the relevant medical records

and make the fact witnesses available for deposition so their live testimony will not be necessary.

They also argue, *inter alia*, that the District of Columbia is the more convenient forum for the

many expert witnesses that are likely to testify in this case, that it is the site of the "original

industry-wide promotion of DES," and that the interpretation of the District of Columbia's

statute of limitations will be a central issue in the case. Finally, they assert that their choice of

forum is entitled to deference. (Pl. Opp. at 1-6.)

The determination of whether an action should be transferred "is committed to the sound

discretion of the trial court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). Section

1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a

district court may transfer any civil action to any other district or division where it might have

been brought," and grants the district court discretion to "adjudicate motions to transfer

according to individualized, case-by-case consideration of convenience and fairness." *Reiffin v.*

*Microsoft Corp.*, 104 F. Supp. 2d 48, 50 (D.D.C. 2000) (quoting *Stewart Org., Inc. v. Ricoh*

*Corp.*, 487 U.S. 22, 29 (1988)) (internal quotation marks omitted). As both parties point out,

there have been numerous transfer motions in DES cases before this Court over the years.

Consistent with the fact-specific approach required for deciding motions to transfer under

Section 1404(a), the disposition of these cases has varied according to the particular facts present

in the case.

To succeed on a motion to transfer, defendant must first establish that the action could

have been brought in the proposed transferee district, *i.e.*, the District of Maine. *DeLoach v.*

*Philip Morris Co.*, 132 F. Supp. 2d 22, 24 (D.D.C. 2000). Second, it must "demonstrate that the

balance of convenience of the parties and witnesses and the interest of justice are in their favor."

*Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 569 F. Supp. 773, 774 (D.D.C. 1983). It is

undisputed that this action could have been brought in the District of Maine. Therefore, it is

only the second inquiry that requires examination.

-2-

In evaluating a motion to transfer pursuant to Section 1404(a), a court must weigh a number of private and public interest factors. *See Reiffin*, 104 F. Supp. 2d at 51-52. The relevant private interest factors include, but are not limited to: (1) plaintiffs' privilege of choosing the forum; (2) defendant's preferred forum; (3) location where the claim arose; (4) convenience of the parties; (5) convenience of witnesses, but only to the extent that witnesses may be unavailable for trial in one of the fora; and (6) ease of access to sources of proof. Public interest considerations include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home. *See Airport Working Group of Orange County, Inc. v. U.S. Dep't of Def.*, 226 F. Supp. 2d 227, 229 (D.D.C. 2002) (citing *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996)).

Applying these factors here, the Court finds that they weigh in favor of transfer to the District of Maine. Plaintiff does not dispute defendant's assertion that all of the fact witnesses who have been identified date, as well as both plaintiffs, reside in Maine. The subpoena power of the Maine court reaches all of those potential non-party witnesses, while this Court's does not. Plaintiffs' argument that the District of Columbia is more convenient for the likely expert witnesses is unavailing in comparison. While these potential expert witnesses, who by virtue of their role as paid experts must be prepared to travel to testify and are compensated for doing so, are spread out across many states (*see* Pl. Opp. at 5), one single state -- Maine -- is apparently home to all essential fact witnesses. The relevant medical records are also located in Maine. Therefore, convenience of the witnesses and ease of access to the sources of proof both weigh in favor of transfer.

-3-

Maine, the site of the alleged prescription, purchase, and ingestion of DES by Mrs.

Lentz's mother, is also the location where plaintiffs' specific claim arose, which further weighs

in favor of transfer.  Plaintiffs argue that the District of Columbia was the "place of the industry

approval efforts for DES" and suggest, without identifying any, that an "army" of DES lobbyists

and salespeople who may be potential witnesses reside within this Court's subpoena power.  (Pl.

Opp. at 6.)  However, as Judge Walton noted in another recent DES case, these contacts, which

are not directly related to this particular case, do not tip the balance in favor of maintaining this

case in the District of Columbia, particularly when compared to the nucleus of facts, witnesses,

and documents located in Maine.  *See Thompson v. Eli Lilly*, No. 03-122, at 5 (D.D.C. June 27,

2003).

In addition to the private interest factors that decidedly weigh in favor of transfer, the

public interest factors also favor transfer.  Though the issue has not been decided, it appears that

while the D.C. statute of limitations may apply, Maine substantive law will govern this case.[1]

And as numerous courts have recognized, the "interests of justice are best served by having a

case decided by the federal court in the state whose laws govern the interests at stake." *Kafack v.*

*Primerica Life Ins. Co.*, 934 F. Supp. 3, 8 (D.D.C. 1996); *see Trout*, 944 F. Supp. at 19.

Similarly, Maine has a greater interest than the District of Columbia in adjudicating the personal

injury claims of Maine citizens under its own tort law.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S.

501, 509 (1947).

---

[1]The relevant factors to be considered in the District of Columbia's choice of law
analysis would seem to favor the application of Maine substantive law in this case.  *See Ideal*
*Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148 (D.D.C. 1997); *Herbert v. District of*
*Columbia*, 808 A.2d 776, 779 (D.C. 2002).

-4-

In contrast, the sole factor that weighs against transfer is the plaintiffs' choice of forum. Ordinarily, a plaintiff's choice of forum is entitled to considerable deference. *See Piper Aircraft*, 454 U.S. at 255; *Armco Steel Co., L.P. v. CSX Corp.*, 790 F. Supp. 311, 323 (D.D.C. 1991). However, that deference is minimized where "the plaintiffs' choice of forum has no meaningful ties to the controversy and no particular interest in the parties or the subject matter,"and "the defendant['s] burden in a motion to transfer decreases when the plaintiffs' choice of forum has no meaningful nexus to the controversy and the parties." *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001) (internal quotation marks and citations omitted); *see Liban v. Churchey Group II, L.L.C.*, 305 F. Supp. 2d 136, 141-42 (D.D.C. 2004); *Airport Working Group*, 226 F. Supp. 2d at 230.  The deference owed to plaintiffs' choice of forum is further diminished where "transfer is sought to the forum where plaintiffs reside." *Citizen Advocates for Responsible Expansion, Inc. v. Dole*, 561 F. Supp. 1238, 1239 (D.D.C. 1983); *see Payne v. Giant of Maryland, L.L.C.*, 2006 WL 1793303, at *4 (D.D.C. June 28, 2006); *Turner & Newall, P.L.C. v. Canadian Universal Ins. Co.*, 652 F. Supp. 1308, 1310 (D.D.C. 1987) (noting that the presumption against disturbing plaintiff's choice of forum "may switch to defendants' favor in the District of Columbia when neither party resides in the chosen forum and the cause of action arises elsewhere").  The District of Columbia's ties to this case are minimal, while Maine's interests are considerable, as the plaintiffs reside there, the injuries at issue occurred in Maine, and the doctors who prescribed DES to Mrs. Lentz's mother practiced in Maine.  The plaintiff's choice of forum therefore carries little, if any, weight and is insufficient to overcome the factors that weigh in favor of transfer.

Accordingly, it is hereby **ORDERED** that defendant's motion to transfer [Dkt. # 17] is

**GRANTED**.  The Clerk of the Court is ordered to transfer this case to the United States District

Court for the District of Maine.

     **SO ORDERED**.

/s/
_____
ELLEN SEGAL HUVELLE
United States District Judge

Date: December 18, 2006

-6-

# Attachment B

## To
## Affidavit of John Chadwick Coots in Support of
## Defendant Eli Lilly and Company's Motion to Transfer

Filed in:
*Elaine Cody and David Cody v. Eli Lilly and Company*
U.S. District Court for the District of Columbia
Civil Action No. 1:07-cv-01887-JR/AK

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NANCY THOMPSON and<br>MARK A. THOMPSON,<br><br>      Plaintiffs,<br><br>v.<br><br>ELI LILLY AND COMPANY,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 03-122 (RBW)<br>)<br>)<br>)<br>)<br>) |

## ORDER

The plaintiffs, Nancy and Mark Thompson, have brought this product liability action against the defendant, Eli Lilly and Company, for injuries that Mrs. Thompson alleges she suffered as a result of her mother's use of diethylstilbestrol ("DES") during her mother's pregnancy with Mrs. Thompson.  The defendant seeks to have this case transferred to the District of Massachusetts "[b]ecause it would be more convenient for the parties to litigate this action in the District of Massachusetts -- where the alleged exposure in utero to (DES) took place, where almost all of the fact witnesses reside -- and because there is absolutely no connection between the District of Columbia and plaintiffs' claims.  Motion of Defendant Eli Lilly and Company to Transfer Action, Memorandum of Points and Authorities in Support of Eli Lilly and Company's Motion to Transfer ("Def.'s Mem.") at 2-3.  Upon consideration of the parties' submissions and for the reasons set forth below, the Court will transfer this case to the District of Massachusetts.

1

28 U.S.C. § 1404(a) (2000) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.   A district court is given broad discretion when considering whether to grant or deny a motion to transfer, which entails first determining whether the action could have been brought in the proposed transferee district and, if so, examining several private and public interest factors.  While deference is typically given to a plaintiff's choice of forum and the moving party "bears the burden of demonstrating that transfer pursuant to Section 1404(a) is warranted[,] Gemological Institute of America v. Thi-Dai Phan, 145 F. Supp. 2d 68, 71 (D.D.C. 2001), courts recognize that less deference is given when the chosen forum is not the plaintiff's home forum, Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001). With these considerations in mind, the Court will first examine whether this case could have been brought in the District of Massachusetts.

**(A)     Could This Action Have Been Brought in the District of Massachusetts?**

Before a case may be transferred to another judicial district, a court must determine whether the transferee district is a proper venue and can exercise personal jurisdiction.  Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...  In this case, it is undisputed that this action could have been brought in Massachusetts.  This is because the alleged events that gave rise to the plaintiffs' claims occurred there, as Mrs. Thompson's mother received and ingested the DES in Massachusetts.  Def.'s Mem. at 1. And, pursuant to Massachusetts' long-arm statute, it is also undisputed that a federal court in Massachusetts would be able to exercise personal jurisdiction over the defendant,

2

as Eli Lilly acknowledges that it had sufficient contacts with Massachusetts through its sales of DES in that jurisdiction. Id. at 3. (citing Mass. Gen. Laws ch. 223A, § 3 (Massachusetts long-arm statute governing torts allegedly committed in Massachusetts)). Having concluded that this action could have been brought in Massachusetts, the Court will now evaluate whether the private and public interest factors favor the transfer of this action.

**(B)    Do the Interests of the Parties and the Public Favor of Transferring this Case to the District of Massachusetts?**

In considering a motion to transfer, a Court must examine several factors, such as: "[t]he convenience of the witnesses of plaintiff and defendant; ease of access to sources of proof; availability of compulsory processes to compel the attendance of unwilling witnesses; the amount of expense for the willing witnesses; the relative congestion of the calendars of potential transferor and transferee courts; and other practical aspects of expeditiously and conveniently conducting a trial.   Boers, 133 F. Supp. 2d at 65 (D.D.C. 2001) (citation omitted).

Upon evaluating these factors, it is abundantly clear that this case should be transferred to the District of Massachusetts. Massachusetts is the situs where the DES was ingested and therefore the location where any injury resulting from its use occurred. Nearly all of the fact witnesses reside in Massachusetts, including the plaintiffs, Mrs. Thompson's mother, all of the physicians who have treated Mrs. Thompson for the injury she allegedly sustained, and Mrs. Thompson's primary care physicians. Def.'s Mem. at 1-2. Furthermore, the ability to access much of the physical proof with the least effort favors transfer to Massachusetts, as that is where Mrs. Thompson and her mother's

3

medical records are located. And, the pharmacies that sold Mrs. Thompson's mother the

DES are also located there.[1]

In addition, because the majority, if not all of the witnesses reside in

Massachusetts, any concerns regarding the availability of compulsory process and the

expense of securing the presence of the witnesses also favor transfer to Massachusetts.

While the plaintiffs focus on the relative congestion of the two courts' calendars as

grounds for the case not being transferred,[2] the Court notes that this case is at an early

stage of the litigation[3] and this Court's calendar is actually quite congested.[4]

Other relevant factors also weigh in favor of transferring this case to

Massachusetts. Not only do the local interests in this matter strongly favor transferring

---

[1] Defendant notes that the three major issues in DES cases are: the questions of exposure, product identification, and the nature and extent of Mrs. Thompson's alleged injuries. Regarding exposure, defendant anticipates the need to obtain relevant medical records and to depose the physicians that are still alive who treated plaintiff's mother during her pregnancy. Def.'s Mem. at 5. As for product identification, defendant maintains it will need to depose the dispensing pharmacist or other pharmacy employees regarding the dispensing practices of the pharmacy or pharmacies in question. Id. Finally, regarding Mrs. Thompson's injuries, defendant contends that proof of the alleged injuries will come to the fact-finder in the form of medical records located in Massachusetts and from the testimony of Mrs. Thompson's and her mother's physicians. Three of the seven physicians identified by the plaintiffs who treated Mrs. Thomson are still living and believed to currently practice in Massachusetts. Id. at 6. In addition, most, if not all of the other witnesses and non-witness evidence are also located in Massachusetts.

[2] Plaintiffs' counsel seeks to make a comparison between the efficiency and speed of this Court and the District of Massachusetts in resolving DES cases. The basis offered for this comparison is two DES cases originally filed in this Court on October 7, 2002. Compare Christine Foti et ux v. Eli Lilly and Company, Civ.A. No. 02-1977, with Hillary Blank et ux v. Eli Lilly and Company, Civ.A. No. 02-1976. In the first case a motion to transfer the case to Massachusetts was granted on November 22, 2002, and according to the plaintiffs, no action has yet been taken by the Massachusetts district court. And, in an effort to make a comparison between the two jurisdictions, the plaintiffs assert that in the second case a settlement conference has been scheduled for August 5, 2003, before another member of this Court.

[3] This case is currently in the early stages of litigation as the close of discovery is not scheduled to occur until October 15, 2003.

[4] Neither party disputes that the assigned judicial settlement officer, Magistrate Judge Kay, has experience settling DES cases, which admittedly could contribute to the expeditious resolution of this action. However, the District of Massachusetts has been exposed to substantial DES litigation as well, see, e.g., Payton v. Abbott Labs., 100 F.R.D. 336 (D. Mass. 1983), and has had at least five DES cases transferred to it from this district in the last year and a half. Defendant's Reply in Support of its Motion to Transfer ("Def.'s Reply ) at 4. Therefore, the plaintiffs have failed to demonstrate that calender congestion in the District of Massachusetts would unduly delay the resolution of this case or that this court is better equipped to ensure the timely processing of a DES case.

4

this case to Massachusetts, but it also appears that Massachusetts state law will govern the plaintiffs' claims.[5]  And a Massachusetts court is better equipped to apply Massachusetts law, as another member of this Court has commented, the interests of justice "[a]re best served by having a case decided by the federal court in the state whose laws govern the interests at stake.   Trout Unlimited v. United States Dep't of Agriculture, 944 F. Supp. 13, 19 (D.D.C. 1996).

While this Court finds it significant that Massachusetts has such strong connections to this case, equally significant is that the District of Columbia has no such connection to this matter.  The plaintiffs assert that there is a connection between the District of Columbia and their claims because this jurisdiction is where the original industry wide promotion of DES occurred and where defendant lobbied and applied for Food and Drug Administration  approval to sell and promote DES.  Plaintiffs' Opposition to Defendant's Motion to Transfer ("Pls' Opp'n ) a t 4.  Plaintiffs also argue that the defendant spent over $6,500,000 in 2001 on marketing and lobbying efforts in the District of Columbia and currently employs at least 58 lobbyists in this jurisdiction.  Id. at 5.  Plaintiffs further note that the defendant itself has selected the District of Columbia as its home forum in litigation against its insurers involving coverage of the DES claims that have been filed against it.  Id.  This Court is unconvinced that these contacts, which have no direct connection to this case, favor maintaining this case in the District of Columbia.

---

[5] If this case remained in the District of Columbia, Massachusetts substantive law would most likely govern this litigation.  To determine what law this Court would have to apply, it must use the District of Columbia's choice of law analysis.  See Ideal Electronic Security Co. v. International Fidelity Ins. Co., 129 F.3d 143, 148 (D.D.C. 1997).  And this analysis would seemingly compel this court to apply Massachusetts law.

5

Finally, the Court notes that this case is clearly distinguishable from a recent DES case in which this Court denied transfer pursuant to 28 U.S.C. § 1404(a). In Ingram v. Eli Lilly & Co., No. Civ.A. 02-2023, 2003 U.S. Dist. LEXIS 1619, (D.D.C. January 28, 2003) (Walton, J.), the plaintiff's injuries arose in Seattle, Washington. Id. at *5. However, the plaintiff's mother lived in Oklahoma; the prescribing obstetrician was located in California; plaintiff's expert witnesses resided in Texas, Arkansas, Pennsylvania and Alabama; and none of the expert witnesses that the defendant customarily used were located in the State of Washington State. Id. Thus, although the State of Washington was the location where the DES was prescribed and ingested, none of the vital witnesses remained in that jurisdiction. Id. In this case, there is no such concern over a lack of a substantial connection to one particular jurisdiction. Therefore, the plaintiffs' reliance on Ingram is misplaced.

Accordingly, it is, hereby this 27th day of June, 2003,

**ORDERED** that the defendant's motion to transfer the case is **GRANTED**. It is

**FURTHER ORDERED** that this case shall be transferred to the District of Massachusetts.

REGGIE B. WALTON
United States District Judge

6

**Attachment C**

To
Affidavit of John Chadwick Coots in Support of
Defendant Eli Lilly and Company's Motion to Transfer

Filed in:
*Elaine Cody and David Cody v. Eli Lilly and Company*
U.S. District Court for the District of Columbia
Civil Action No. 1:07-cv-01887-JR/AK

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| VALERIE ABRAMSON, et al., |
| Plaintiffs, |
| v. |
| ELI LILLY AND COMPANY, |
| Defendant. |

Civil Action No.  03-2541 (JDB)

## MEMORANDUM OPINION

This in utero diethylstilbestrol (DES) exposure case brought by plaintiff Valerie Abramson and her husband Chett Abramson ("plaintiffs") against defendant Eli Lilly and Company is one of many currently pending in this Court.  Following initial discovery, defendant has moved to transfer the action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of New Jersey, which defendant submits is a more convenient forum.[1]  The Court agrees based on the specific facts of this case.

## FACTUAL BACKGROUND

There is no dispute as to certain facts central to the disposition of defendant's motion. Plaintiffs reside in New Jersey, as do plaintiff Valerie Abramson's parents.  Ms. Abramson's gynecologist during the relevant 1988 to 2001 period practices in New Jersey.  The other relevant physicians identified by plaintiffs in interrogatory responses all practice in New Jersey and reside in New York (well within the subpoena power of the District of New Jersey pursuant to

---

[1] Briefing on the motion was completed on August 31, 2004.

-1-

Fed.R.Civ.P. 45(b)(2)).  No non-party fact witness resides in the District of Columbia or is within

the subpoena power of this Court.  None of the events relating to plaintiffs giving rise to this

specific action have any connection to the District of Columbia.  As plaintiffs expressly agree, this

case could have been brought in the District of New Jersey.

Plaintiffs do, however, claim some connection to the District of Columbia by virtue of

defendant's lobbying and promotion efforts with the Food and Drug Administration ("FDA")

relating to DES, which occurred largely in the District of Columbia, although for the most part

long ago.  Plaintiffs also point out that defendant has itself brought suit in the District of

Columbia against its insurers over DES claims.  Moreover, plaintiffs observe that many DES

cases have been brought here, and that the judges of this Court, and particularly Magistrate Judge

Kay, have developed an expertise in these cases.

## ANALYSIS

Most of the judges of this Court, including this judge,[2] have denied similar transfer

motions in DES cases against Eli Lilly.  Where there is no connection to this forum and a strong

connection to one other forum, however, transfer has been granted.  See Thompson v. Eli Lilly

and Co., Civil Action No. 03-0122 (RBW) (D.D.C. June 27, 2003).

The Court agrees that this action could have been brought in the District of New Jersey.[3]

However, plaintiffs' choice of forum is entitled to some weight, although it is given less deference

when (as here) the chosen forum is not the plaintiff's home forum.  See Piper Aircraft v. Reyno,

---

[2] See Roing, et al. v. Eli Lilly & Co., Civil Action No. 02-2211 (JDB) (D.D.C.) (Order dated Jan. 28, 2003).

[3] There is no doubt that the District of New Jersey would have jurisdiction over the action and that venue is proper there.

-2-

454 U.S. 235, 255-56 (1981); <u>Boers v. United States</u>, 133 F. Supp. 2d 64, 65 (D.D.C. 2001). On

the other hand, defendant has engaged in some lobbying and other efforts related to DES in the

District of Columbia. Moreover, it is the forum of choice for many DES cases against Eli Lilly,

and even has been the forum of choice by Eli Lilly for its litigation against insurers regarding

coverage for DES claims.[4]  Although it does not appear likely that the District Judges of this Court

have developed much real expertise in the substance of these DES cases, certainly Magistrate

Judge Kay has considerable experience in the settlement context. Finally, it is undisputed that

plaintiffs and defendant both have counsel (the latter in the District of Columbia) experienced in

handling this type of litigation, and that those counsel have cooperated in other DES cases in the

District of Columbia with respect to making witnesses and documents (including medical records)

readily available. These relevant factors, taken together,  do not weigh clearly in favor of transfer

to the District of New Jersey.

What may be different about this case, however, is the convenience of witnesses factor

under section 1404(a). Indeed, "the most critical factor to examine under 28 U.S.C. § 1404(a) is

the convenience of the witnesses." <u>Chung v. Chrysler Corp.</u>, 903 F. Supp. 160, 164 (D.D.C.

1996). The ease of access to sources of proof, the expenses for willing witnesses, and whether the

claim arose elsewhere are all important considerations in this assessment. <u>See</u> <u>Trout Unlimited v.</u>

<u>United States Dep't of Agriculture</u>, 944 F. Supp. 13, 16 (D.D.C. 1996).

Here, all the relevant fact witnesses on exposure, injury and causation are more easily

---

[4] Eli Lilly opposed a motion to transfer in that case, defending its right to choose the
District of Columbia courts against allegations that it was engaged in forum shopping. Defendant
has explained, however, that the choice of forum there was based in part on the need to
accommodate travelers from around the globe.

accessed in New Jersey than in the District of Columbia -- plaintiffs, Ms. Abramson's parents, her gynecologist, and other treating physicians. No fact witness appears to be located in or close to the District of Columbia. The subpoena power of the New Jersey court reaches all those witnesses, while this Court's subpoena power does not.[5] The relevant medical records are also more readily obtained in New Jersey from the various physicians. Nor, quite obviously, did the claim, or any events giving rise to the claim, occur here.

Unlike many of the other DES cases, where relevant witnesses are spread around the country (even in the District of Columbia), this is a case with a single forum that is plainly most convenient for the witnesses -- the District of New Jersey. Moreover, that is the forum where most of the operative facts occurred, although some also apparently occurred in other states but not in the District of Columbia.[6] It is simply beyond cavil that transfer to the District of New Jersey will be considerably more convenient (and less expensive) for the witnesses. Importantly, that will also enable the relevant witnesses to be compelled to testify because they will be within the subpoena power of that court, which is not the case were the action to remain in this Court. Finally, given the very minimal connection of this lawsuit to the District of Columbia, it does not seem appropriate to burden this jurisdiction and its limited resources, or even Magistrate Judge

---

[5] Conceivably, then, some of those witnesses could decline to appear if the case went forward to trial in this Court.

[6] The Court does not find persuasive the argument that DES-related lobbying efforts to the FDA tie this case to the District of Columbia. Documents related to those efforts have already been produced to plaintiff's counsel. Likewise, a 1941 meeting of representatives of drug manufacturers in Washington, D.C., is too attenuated a basis for connecting this action to the District of Columbia.

Kay, with this case.[7]

Accordingly, defendant's motion to transfer this case to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a) in the interests of justice and for the convenience of the parties and witnesses will be granted. A separate order will be issued.

/s/    John D. Bates
JOHN D. BATES
United States District Judge

Dated: October 25, 2004

---

[7] Plaintiffs emphasize the several other cases in this District in which transfer has been denied, including a case brought by Ms. Abramson's sister. The point remains, however, that section 1404(a) transfer motions are extremely fact-dependent, turning largely on the connection of the specific case to the transferee and transferor forums and the convenience and location of the relevant witnesses.

Copies to:

Patricia Martin Stanford
3609 Hendricks Avenue
Jacksonville, FL 32207
(904) 346-4215
Fax: (904) 346-4275
E-mail: pmslaw1@aol.com
           *Counsel for plaintiffs*

Lawrence Hedrick Martin
FOLEY HOAG LLP
1875 K Street, NW
Suite 800
Washington, DC 20006
(202) 223-1200
Fax: (202) 785-6687
E-mail: lmartin@foleyhoag.com

James J. Dillon
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
(617) 832-1000
Fax: (617) 832-7000
E-mail: jdillon@foleyhoag.com
           *Counsel for defendant*

# Attachment D

## To
## Affidavit of John Chadwick Coots in Support of
## Defendant Eli Lilly and Company's Motion to Transfer

Filed in:
*Elaine Cody and David Cody v. Eli Lilly and Company*
U.S. District Court for the District of Columbia
Civil Action No. 1:07-cv-01887-JR/AK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KIMBERLY MCKELVEY, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | )    Civil Action No. 06-1820 (RMC) |
|  | ) |
| ELI LILLY AND COMPANY, | ) |
|  | ) |
| Defendant. | ) |

## ORDER

This is a products liability personal injury case arising from Plaintiff Kimberly McKelvey's alleged in utero exposure to diethylstilbestrol ("DES") manufactured by Eli Lilly and Company ("Lilly"). Lilly moves to transfer this case to U.S. District Court for the Central District of California because it would be more convenient for the parties and the witnesses and because this case has no factual nexus to the District of Columbia. Despite Ms. McKelvey's opposition to the motion, the motion will be granted.

Section 1404(a) authorizes a court to transfer a civil action to any other district where it could have been brought "for the convenience of parties and witnesses, in the interest of justice . . ." 28 U.S.C. § 1404(a). Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The moving party bears the burden of establishing that transfer is proper. *Trout Unlimited v. Dep't. of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). Accordingly, Lilly must make two showings to justify transfer. First, Lilly must establish that Ms. McKelvey originally could

have brought the action in the Central District of California. *See Van Dusen*, 376 U.S. at 622-23.

Second, Lilly must demonstrate that considerations of convenience and the interest of justice weigh

in favor of transfer to the California court. *See Trout Unlimited*, 944 F. Supp. at 16.

Ms. McKelvey concedes that this action could have been brought in California, Pl.'s

Mem. at 2, but she contends that the private and public interest factors do not weigh in favor of a

transfer. The private interest considerations include: (1) the plaintiff's choice of forum, unless the

balance of convenience is strongly in favor of the defendants; (2) the defendant's choice of forum;

(3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the

witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the

fora; and (6) the ease of access to sources of proof. *Trout Unlimited*, 944 F. Supp. at 16 (citing

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). The public interest considerations

include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the

calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local

controversies at home. *Id.*

A plaintiff's choice of forum is entitled to deference, "except when the plaintiff is a

foreigner in that forum." *Thayer/Patricof Educ. Funding, LLC v. Pryor Res., Inc.*, 196 F. Supp. 2d

21, 31-32 (D.D.C. 2002). "[W]hile the plaintiff's choice of forum is generally entitled to deference,

where the forum choice has no factual nexus with the lawsuit, plaintiff's choice of forum may be

accorded less weight in a section 1404(a) analysis . . . . In fact, the presumption may switch to

Defendant's favor when neither party resides in the chosen forum and the cause of action arose

elsewhere." *Abbott Labs. v. U.S. Fid. & Guar. Co.*, No. 88-2232, 1989 WL 5557, *2 (D.D.C. Jan.

10, 1989) (citations and internal quotation marks omitted); *see also Boers v. U.S.*, 133 F. Supp. 2d

64, 65 (D.D.C. 2001) (court should give plaintiff's choice of forum substantially less deference when the forum plaintiff prefers is not his home forum); *Trout Unlimited*, 944 F. Supp. at 17 (deference to plaintiff's choice of forum is mitigated where plaintiff chose a forum with no factual nexus to the case and transfer is sought to a forum with ties to plaintiff and the subject matter of the lawsuit).

Ms. McKelvey does not reside in the District of Columbia and this case did not arise here. Ms. McKelvey resides in Santa Clarita, California. The events that gave rise to this case — the prescription, purchase, and ingestion of DES and Ms. McKelvey's in utero exposure to DES — all occurred in California. Because Ms. McKelvey does not reside here and the District of Columbia has no factual nexus to this case, Ms. McKelvey's choice of forum is given little deference.

Further, private interest considerations compel the transfer of this case to California, a forum with a substantial connection to this case. Ms. McKelvey and her mother both reside in California. Also, Ms. McKelvey's diagnosing and treating doctors are located in California. No witnesses that have been identified thus far are located in D.C. *Accord* Def's Mem. Ex. B, *Abramson v. Eli Lilly & Co.*, No. 03-2541, *4 n.6 (D.D.C. Oct. 25, 2004) (DES case transferred to N.J. because plaintiff and her parents resided in N.J. and the prescribing and treating physicians practiced there; D.C. had no connection to the case); Def's Mem. Ex. A, *Thompson v. Eli Lilly and Co.*, No. 03-122 (June 27, 2003) (DES case transferred to Mass. because plaintiff, her mother, all of the treating physicians, and all of the fact witnesses resided there; D.C. had no factual nexus with the case).

Ms. McKelvey also asserts that the District of Columbia bears a factual nexus to this case based on a May 13, 1941 letter from Lilly regarding lobbying and DES drug applications. Pl.'s Mem. at 8 n.2. Ms. McKelvey's suit alleges DES exposure in 1971. The 1941 letter's connection

3

to this case is so attenuated that it does not establish a factual nexus with this forum. *Accord* Def's

Mem. Ex. B, *Abramson*, No. 03-2541 at *4 n.6 (lobbying efforts in 1941 did not tie case to D.C.).

In addition, non-party witnesses that have been identified are within the subpoena

power of the Central District of California and are not within the subpoena power of this Court.

Generally, a subpoena may be served within the district or within 100 miles. Fed. R. Civ. P.

45(b)(2). Ms. McKelvey also asserts that she will voluntarily provide non-party witnesses for

deposition upon oral request and that subpoenas will not be necessary. Unfortunately, Ms.

McKelvey cannot guarantee the cooperation of non-party witnesses. Lilly is entitled to compel

testimony via subpoena if need be. A court's ability to compel the appearance of unwilling non-

party witnesses is an important factor in determining a motion to transfer. *DeLoach v. Phillip Morris*

*Cos., Inc.*, 132 F. Supp. 2d 22, 25 (D.D.C. 2000); *see Piper Aircraft v. Reyno*, 454 U.S. 235, 258-59

(1981) (finding that because many crucial witnesses were located overseas and therefore beyond the

reach of compulsory process, and because a large portion of the relevant evidence was located in

Great Britain, private interest factors weighed in favor of transferring venue).

Ms. McKelvey argues that she chose to file her suit in the District of Columbia

because she was unable to find counsel in California and because her counsel, who is based in

Florida, also practices in the District of Columbia. She also points out that her experts are all located

on the East Coast. These arguments are unavailing, as the inconvenience and expense to plaintiff's

counsel and to expert witnesses are of minor importance under § 1404(a). *Froessl v. Expervision*,

No. 93-2126, 1994 WL 149855, *2 & *4 (D.D.C. Apr. 14, 1994).

Public interest factors also weigh in favor of transfer. California is the forum that has

an interest in deciding this controversy. Not only is California the place where the cause of action

4

arose, it is also likely that under D.C.'s choice of law analysis California law applies. *See Jaffe v. Pallotta Teamworks*, 374 F.3d 1223 (D.C. Cir. 2004) (discussing and applying D.C.'s choice of law rules). Moreover, it is inequitable to impose the burden of trying this case on the District of Columbia and its limited resources when this District bears no connection whatsoever to the facts of this case. *See* Def's Mem. Ex. B, *Abramson*, No. 03-2541 at *4-5 (when a case bears minimal connection to D.C., it is not appropriate to burden this jurisdiction and its limited resources with the suit).

For the foregoing reasons, Lilly's motion to transfer [Dkt. # 13] is **GRANTED**. This case is **TRANSFERRED** to U.S. District Court for the Central District of California.

Date: April 12, 2007

_____ /s/ _____
ROSEMARY M. COLLYER
United States District Judge

5

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ELAINE CODY and**<br>**DAVID CODY** | ) |
|  | ) |
|  | ) |
| **Plaintiffs,** | ) **CIVIL ACTION NO.** |
|  | ) **1:07-cv-01887 (JR/AK)** |
|  | ) |
| **vs.** | ) |
|  | ) |
| **ELI LILLY AND COMPANY,** | ) |
|  | ) |
| **Defendant.** | ) |
|  | ) |

## <u>ORDER</u>

UPON CONSIDERATION of Defendant Eli Lilly and Company's Motion to

Transfer to the District of Massachusetts pursuant to 28 U.S.C. Section 1404(a),

IT IS HEREBY ORDERED that Eli Lilly and Company's Motion is granted;

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. Section 1404(a), this

case is transferred to the United States District Court for the District of Massachusetts.

Dated: _____, 2008    _____

The Honorable James Robertson

cc:    Appended list of counsel of record

1

145788v2

## <u>COUNSEL OF RECORD</u>

Aaron M. Levine
Aaron Levine & Associates
1320 19th St., N.W., Suite 500
Washington, D.C. 20036
**Attorneys for Plaintiff**

Michelle R. Mangrum, Esq.
Shook, Hardy & Bacon L.L.P.
600 14th Street, N.W., Suite 800
Washington, D.C.  20005-2004
**Attorneys for Defendant Eli Lilly and Company**

2