UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
ELAINE CODY, et al.,                        )
                                            )
                 Plaintiffs,                )        Civil Action No.: 07-1887 (JR/AK)
                                            )        Next Event:    Plaintiffs' Rule 26(a)(2) Report
        v.                                  )                Due April 3, 2008
                                            )
ELI LILLY AND COMPANY,                      )
                                            )
                 Defendant.                 )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

**PLAINTIFFS' OPPOSITION TO DEFENDANT ELI LILLY AND COMPANY'S
MOTION TO TRANSFER TO THE DISTRICT OF MASSACHUSETTS**

COME NOW Plaintiffs, through counsel, and oppose Defendant Eli Lilly and
Company's ("Defendant" or "Lilly") Motion to Transfer to the District of Massachusetts, and as
grounds therefore, state:

**I.      INTRODUCTION**

Unable to provide that any evidence or witnesses will be actually unavailable (contrary to
the practice in DES cases in the District of Columbia over the last twenty years), Defendant
introduces a vague laundry list of mostly insignificant nonparty contacts in an attempt to make
Massachusetts appear critical to the evidence and witnesses in this case.  Elaine Cody's mother
is an important witness *for Plaintiffs.* Her cooperation and her availability is not in question;
Plaintiff shall and must present her mother for discovery or trial wherever and whenever
Defendant requests.  Looking at the questions of convenience and justice, the District of
Columbia is the most appropriate jurisdiction for this suit.

## II.    EACH MOTION TO TRANSFER MUST BE JUDGED ON ITS OWN FACTS, NOT THOSE OF PRIOR CASES

A court judges a motion to transfer on a case-specific basis.  Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  In fact, the District of Columbia Circuit has made it clear that there are no "fixed" or "general" rules mandating transfer on a set of facts; every motion for transfer must be considered on its own facts.  See S.E.C. v. Savoy Industries, Inc., 587 F.2d 1149, 1154 (D.C. Cir. 1978) (citing Starnes v. McGuire, 512 F.2d 918, 929 (1974)).

Courts this district, taking heed of the Supreme Court's and this Circuit's directives to consider the facts of each case, have denied transfer even where DES plaintiffs live in the state of their exposure, and contacts outside the state are limited.  See, e.g., Miller v. Eli Lilly and Co., No. 03-896 (D.D.C. May 5, 2004), attached as Appendix 1; Roing v. Eli Lilly and Co., Civil Action No. 02-2211 (D.D.C. Jan. 2003) (Massachusetts), App. 2; Peterson v. Eli Lilly and Co., No. 01-1404 (D.D.C. Jan. 9, 2002) (Massachusetts), App. 3;  Scaramuzzi v. Eli Lilly and Co., Civil Action No. 01-1095 (D.D.C. Dec. 19, 2001) (Rhode Island), App. 4.

It is Defendant's burden to show that key witnesses would be inconvenienced by maintaining this case in the District of Columbia, but it can do nothing more than speculate.

## III.    DEFENDANT HAS FAILED TO SHOW THAT MASSACHUSETTS IS A MORE CONVENIENT FORUM FOR WITNESSES

It is the burden of the party proposing transfer to show that his forum is more convenient. Ricoh Co. v. Honeywell, 817 F. Supp. 473, 480 (D.N.J. 1993).  Cf. Blank v. Eli Lilly and Co., Civil Action No. 02-1976 (D.D.C. Dec. 13, 2002), mem. op. at 6, App. 5 (cannot assert relative congestion of courts without submitting proof).   Lilly presents nothing more than a list of potential witnesses who do not reside in this jurisdiction.  This is not enough to show that Massachusetts is more convenient.  See Robinson v. Eli Lilly and Co., No. 07-153, Mem. Op. at 7 (D.D.C. Feb. 26, 2008) (Refusing transfer in a DES case as "Lilly has presented no evidence

that any lay or expert witnesses will refuse to appear in this district for trial or cannot have their testimony preserved by videotaped deposition."), attached as App. 6.

The burden on a 28 U.S.C. § 1404(a) motion to transfer is not merely a check-off list of what witnesses are where. Defendant must show that a witness is actually unavailable, rather than generally aver that, since the witnesses are outside the jurisdiction, it will be impossible to subpoena them. "To support its request for transfer under section 1404(a), a moving party must demonstrate (through affidavits or otherwise) what a non-resident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction." Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Resources, Inc., 196 F. Supp. 2d 21, 33 (D.D.C. 2002). Lilly has provided no such evidence in favor of transfer.

The convenience of the witnesses "is considered only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Brannen v. National R.R. Passenger Corp., 403 F. Supp. 2d 89, 94 (D.D.C. 2005). See also Trout Unlimited v. United States Dep't of Ag., 944 F. Supp. 13, 16 (D.D.C. 1996). "Mere inconvenience" is not sufficient to justify transfer, even if a witness is out of the subpoena power of the jurisdiction. See Thayer/Patricof, 196 F. Supp. 2d at 34. "When analyzing the convenience of parties and witnesses, a defendant must show that witnesses would be unwilling to testify in the District of Columbia . . . . Otherwise, *it is assumed that the witnesses will voluntarily appear*." Fc Inv. Group Lc v. Lichtenstein, 441 F. Supp. 2d 3, 14 (D.D.C. 2006) (citations omitted, emphasis added); cf. Cell Genesys, Inc. v. Applied Research Sys. ARS Holding N.V., 2005 U.S. Dist. LEXIS 10152 at *14 (D.D.C. 2005) (standard is "demonstrated unavailability").

Even in DES cases, the defendant must specify the witnesses "that will be unavailable for trial" or otherwise demonstrate that there will be an actual deprivation of evidence. See Ingram

v. Eli Lilly and Co., 251 F. Supp. 2d 1, 6 (D.D.C. 2003).  Past cases in the District of Columbia have established that, given the track record of Plaintiff's counsel, absent a showing that Plaintiff's counsel will not be able to procure the presence of a witness, there is no issue of unavailability.  See Robinson, Mem. Op. at 7, App. 6; Ingram, 251 F. Supp. 2d at 5; Dimanche v. Eli Lilly and Co., No. 03-0236 (D.D.C. Oct. 17, 2003), mem. op. at 3, App. 7; Roing, mem. op. at 2, App. 2.

Lilly's proffer of brief, conclusory statements about the importance of the witnesses, without any regard to whether or not they are actually unavailable to testify in the District of Columbia, does not meet that standard.  See Cell Genesys, supra. (when "there is little in the record concerning which of the [out of jurisdiction] witnesses would testify voluntarily without having to be subpoenaed" there is no reason to consider them unavailable for purposes of evaluating a motion to transfer).

The standard is "will be" unavailable for trial, not "might be."  While many witnesses reside outside the District of Columbia, there is no proof that any of them will be unavailable or that having them testify in the District rises above "mere inconvenience."  Plaintiffs Elaine Cody's mother is healthy and willing to testify absent a subpoena, and there is absolutely no evidence that any other witness would require a subpoena to testify in this case.  Plaintiffs and their counsel will, in this case, ensure the presence of all her lay witnesses in the District of Columbia at her expense, or suffer dismissal.

Furthermore, this is not a case where, but for the location of the forum, witnesses will be unavailable.  Several witnesses will, by the fact of their demise, be available only through their prior deposition testimony.  Defendant's counsel always notes as expert witnesses the testimony of three dead individuals.  See, e.g., Excerpt from Lilly's 26(a)(2) Statement, Pace v. Eli Lilly

and Co., App. 8.  Other than party witnesses and the mother of Ms. Cody, there are no critical witnesses whose availability depends on whether this case takes place in this District or the District of Massachusetts.

Defendant regularly deposed witnesses by telephone in past DES litigation, and can do so in this case with Plaintiff's cooperation and consent.  Defendant has almost never been required to subpoena a fact witness in the hundreds of DES cases and Plaintiff's counsel will lend its offices in the District of Columbia for the accomplishment of these depositions.  Plaintiff's counsel, over the course of hundreds of DES cases, has consistently managed to ensure the presence of witnesses without need for a subpoena.

## IV.    DEFENDANT HAS FAILED TO SHOW THAT MASSACHUSETTS IS A MORE CONVENIENT FORUM FOR PRODUCTION OF DOCUMENTS

Similarly, regarding documents, there is no reason to believe that some documents are unavailable to Defendant due to the forum.  The same standard of burden – that Defendant must show actual unavailability – applies to documents as it does to witnesses.  See Bohara v. Backus Hospital Med. Benefit Plan, 390 F. Supp. 2d 957, 963 (C.D. Cal. 2005).  Documents which are in the possession of counsel or easily transportable to the current forum do not provide support for transfer.  See Thayer/Patricof, 196 F. Supp. 2d at 36.  Plaintiffs provided Defendant with all of their medical records in their possession and executed at Defendant's request additional medical record authorizations so that Defendant could request further medical records if it so chooses.  There are, to Plaintiffs' and Plaintiffs' counsel's knowledge, no documents in existence relevant to this case which are not either already in the possession or control of Defendant.  Defendant has provided no evidence otherwise and there should be no inference that documents are unavailable to Defendant.

Lilly is an Indiana corporation with its principal place of business in Indiana. The vast majority of the documents regarding Lilly's development and sale of its DES product, including documents critical to product identification and liability, are in Indianapolis at Lilly's corporate headquarters. They are not in Massachusetts.

The District of Columbia is the location of the original industry-wide promotion of DES. See "Trip Report, Meeting of Representatives of a Group of Drug Manufacturers Interested in Stilbestrol," Appendix 9. It is also the location of Defendant's application to promote DES. Defendant maintains residence in the District's subpoena jurisdiction of an army of lobbyists and salespeople familiar with the marketing strategies and communications regarding DES. Plaintiffs expect to require discovery of Defendant's actions in promoting DES related to these issues; the coordination of the pharmaceutical manufacturers in the promotion of DES, including the transactions in the District of Columbia, will certainly be an issue in the event of a trial.

Courts in this district have previously found Defendant's efforts a relevant connection to the District of Columbia for transfer analysis.[1]  See, e.g., Robinson, Mem. Op. at 3, 9, 10-11, App. 6; Dimanche, mem. op. at 2, App. 7; Roing, mem. op. at 2, App. 2;  Blank, mem. op. at 5, App. 5; Fastino v. Eli Lilly and Co., No. 02-02210 (D.D.C. Oct. 8, 2003), mem. op. at 5, App. 11.  Even in Abramson v. Eli Lilly and Co., cited by Defendant, the court considered Defendant's actions in the District of Columbia a contact in support of continued jurisdiction. Abramson, mem. op. at 3.

---

[1] To the extent that Thompson, Def's Exh. 3B, and Lentz, Def's Exh. 3A, are to the contrary, it is because Judge Walton and Judge Huvelle made specific findings with regard to the facts of those cases.  See Thompson, mem. op. at 5 ("no direct connection to *this case*"); Lentz, mem. op. at 4 ("not directly related to *this particular case*") (emphasis added).  As discussed supra, each motion to transfer is decided on its own merits; neither Thompson nor Lentz can establish that Defendant's actions in the District of Columbia are *never* enough to be a factor against transfer.  In fact, Judge Roberts recently held in the Robinson case that Lilly's activities in the District of Columbia are potentially significant enough to affect the *choice of law* analysis.  See Robinson, Mem. Op. at 10-11, App. 6. Plaintiff maintains that, for this case, she will require discovery of the District of Columbia-based coordination of efforts by the drug companies regarding DES, not just Defendant's direct interaction with federal regulatory bodies.

## V. OTHER PRIVATE INTEREST FACTORS WEIGH IN FAVOR OF THE DISTRICT OF COLUMBIA

In addition to the fact that Lilly has not established that witnesses will be unavailable, there are private interest factors that weigh in favor of the District of Columbia. The District of Columbia is more convenient for the expert witnesses of both parties, and there are documents available in the District of Columbia from Lilly's DES promotion here.

While expert witnesses have not yet been identified in this case, many expert witnesses regarding DES liability remain the same from case to case. To a great extent, the fundamental issues of this case will be tried by these experts. As such, District of Columbia Courts repeatedly emphasize that the convenience of expert witnesses is considered in the transfer analysis for DES cases. See, e.g., Robinson, Mem. Op. at 3, App. 6; Dimanche, Mem. Op. at 3, App. 7; Roing, Mem. Op. at 2, App. 2; Fastino, Mem. Op. at 4-5, App. 10; Thompson, Mem. Op. at 6, Def's Exh. 3B. Any DES case will require the use of expert witnesses to establish the liability of the defendant, and so their convenience must be given some consideration.

None of the expert witnesses for Plaintiffs or Defendant, who have for years provided the majority of the testimony for the disputed issues in any DES case, are more convenient to the District of Massachusetts. Plaintiffs' usual state of the art and damages experts include Dr. Richard Falk in Annapolis and Dr. Brian Strom in Pennsylvania. Plaintiff's expert Dr. John Hefferen, whose testimony is highly relevant to product identification, resides in Kansas. The Defendant's usual experts include Dr. Melvin Dodson in Florida, Dr. Eugene Albrecht in Baltimore, and Dr. Brian Little in New Jersey. It is more convenient for these experts to come to the District of Columbia than it is to go to the District of Massachusetts. A forum is not more convenient if it merely shifts the inconvenience from one set of witnesses to another. See Doyle

7

v. Unified Sch. Dist. No. 210, Stevens Co., Kan., No. 93-4198, 1994 U.S. Dist. LEXIS 4180 at

*4 (D. Kan. March 17, 1994).

## VI.    THE PUBLIC INTEREST FACTORS ARE NOT SIGNIFICANT ENOUGH TO TRANSFER THIS CASE TO MASSACHUSETTS

The seeds of the DES tragedy were sown in the District of Columbia when Lilly and a

number of other pharmaceutical manufacturers met to discuss a joint effort for FDA approval of

DES.  See Appendix 9.  Furthermore, Judge Roberts recently held in Robinson that the tortious

conduct in DES cases is not necessarily centered in the state of exposure.  See Robinson, Mem.

Op. at 9, App. 6.

As stated by the court in Ingram, "there is nothing uniquely local about DES litigation."

Ingram, 251 F. Supp. 2d at 6.  Other courts in this District have found that the number of DES

cases that this District has already decided prevent there from being a significant interest in the

case leaving this forum.  See, e.g., Robinson, Mem. Op. at 10, App. 6; Fastino, Mem. Op. at 5,

App. 11.  It is interesting to note that in the non-DES case McClamrock v. Eli Lilly and Co.,

Civil Action No. 02-2383, Defendant impressed upon the court that, while the District of

Columbia was not a convenient forum for Zyprexa litigation, the history of DES litigation in the

District of Columbia, and the regular statute of limitations disputes in DES cases, were adequate

reasons to maintain a DES case in this jurisdiction.   See pertinent pages of Eli Lilly's Motion to

Transfer in McClamrock, as App. 10.

The District of Columbia is also Defendant's favored forum for DES litigation.  Eli Lilly

came from its headquarters in Indianapolis to the District of Columbia in 1982 to sue fourteen of

its insurance companies over DES coverage, see Eli Lilly v. Home Ins. Co., 794 F.2d 710 (D.C.

Cir. 1986), even though there was little connection between the insurance transaction and this

jurisdiction.  Eli Lilly could have sued where it resides and where all the contracts in dispute

were written.  All the defendants in the case were non-District of Columbia residents.  There was

no natural connection to the District of Columbia.  Nonetheless, Eli Lilly filed in the District of

Columbia, and when its insurers filed a motion to transfer to Indianapolis, alleging that Lilly was

forum shopping, Eli Lilly opposed by stating:

> Forum shopping is no more evil than any other tactical determination a party
> makes in its behalf.  Any competent lawyer chooses a forum with his or her
> client's interests in mind. . . .

Eli Lilly's Memorandum in Opposition to Motion to Transfer in <u>Eli Lilly v. Home Ins. Co.</u>, p.

14, pertinent parts attached as App. 11.

> . . . Their accusations of 'forum shopping' . . . hope to divert the Court's attention
> from the relevant considerations of convenience and justice to the irrelevant
> matter of Lilly's reason for bringing suit in this District . . . Contrary to
> defendants' assertions, courts have not penalized plaintiffs for selecting forums
> with favorable laws.  The relevant policy considerations are established by Van
> Dusen v. Barrack [citation omitted], the leading case on the subject, which
> *actually protects the plaintiff in his right to bring his action in the state in which
> the law is most advantageous to him.*

<u>Id.</u> at pg. 14 (emphasis partly in original, partly added).  Defendant's use of the District of

Columbia as a forum has been considered relevant regarding the public interest factors.  <u>See</u>

<u>Fastino</u>, mem. op. at 4, App. 3.

Furthermore, in numerous past cases, the parties have mediated these cases in front of the

Honorable Alan Kay.  Magistrate Kay has successfully mediated well over fifty DES cases.

Keeping the case here would resolve it most quickly if Judge Kay could mediate and Plaintiffs

would be amenable to referring the case for early mediation before him.  The availability of

Judge Kay has been held as a factor against transfer.  <u>See</u> <u>Ingram</u>, 251 F. Supp. 2d at 6.

Apart from the underlying law, one of the most important issues in any DES case is the

statute of limitations.  DES was last prescribed in 1971; whether an action is timely filed

depends on interpretation of the District of Columbia's statute of limitations.  A District of Columbia court is in the best position to interpret the District of Columbia statute of limitations.

## VII.    CONCLUSION

Defendant has not established either the inconvenience of the District of Columbia or the convenience of Massachusetts.  Defendant has not presented evidence that any of its allegations of unavailability will come to fruition, and further omits that it already has the vast majority of the documents it claim might be unavailable.  Defendant ignores the contacts this case has with this jurisdiction and ignores the convenience of the expert witnesses.  Nothing will be accomplished by transfer of this case except a half-year's delay, the harassment of Plaintiffs' counsel's staff, added expense, and the burdening of a second federal judge's docket.

For the foregoing reasons, and for such further reasons as will be presented at oral argument, Plaintiffs respectfully request that Defendant's Motion to transfer be denied.

Respectfully submitted,

AARON M. LEVINE AND ASSOCIATES


_____/s/ Aaron M. Levine_____
Aaron M. Levine, #7864
1320 Nineteenth Street, N.W., Suite 500
Washington, D.C. 20036
(202) 833-8040

COUNSEL FOR PLAINTIFFS

## LCvR 7(f) REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7(f), Plaintiffs respectfully request an oral hearing on this motion.

/s/ Aaron M. Levine_____
AARON M. LEVINE, #7864

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
ELAINE CODY, et al.,                    )
                                        )
                    Plaintiffs,         )        Civil Action No.: 07-1887 (JR/AK)
                                        )        Next Event:    Plaintiffs' Rule 26(a)(2) Report
            v.                          )                       Due April 3, 2008
                                        )
ELI LILLY AND COMPANY,                  )
                                        )
                    Defendant.          )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

**AFFIDAVIT OF AARON M. LEVINE, ESQ.
AUTHENTICATING DOCUMENTS**

I, Aaron M. Levine, declare under penalty of perjury that the following is true and correct:

1.  Attached as Appendix 1 is a true copy of selected pages from Defendants' Motion to Transfer to the Northern District of California and of the Civil Docket containing a Minute Order denying same in <u>Miller v. Eli Lilly and Co.</u>, No. 03-896 (D.D.C. May 5, 2004).

2.  Attached as Appendix 2 is a true copy of the Order in <u>Roing v. Eli Lilly and Co.</u>, No. 02-2211 (D.D.C. Jan. 2003).

3.  Attached as Appendix 3 is a true copy of selected pages from the Motion of Defendant Eli Lilly and Company to Transfer Action and the Order denying same in <u>Peterson v. Eli Lilly and Co.</u>, No. 01-1404 (D.D.C. Jan. 9, 2002).

4.  Attached as Appendix 4 is a true copy of the Motion of Defendant Eli Lilly and Company to Transfer Action and Order denying same in <u>Scaramuzzi v. Eli Lilly and Co.</u>, No. 01-1095 (D.D.C. Dec. 19, 2001).

5.   Attached as Appendix 5 is a true copy of the Memorandum Opinion and Order in <u>Blank v. Eli Lilly and Co.</u>, No. 02-1976 (D.D.C. Dec. 13, 2002).

6.   Attached as Appendix 6 is a true copy of the Memorandum Opinion and Order in <u>Robinson v. Eli Lilly and Co.</u>, No. 07-153, Mem. Op. at 7 (D.D.C. Feb. 26, 2008).

7.   Attached as Appendix 7 is a true copy of the order in <u>Dimanche v. Eli Lilly and Co.</u>, No. 03-0236 (D.D.C. Oct. 17, 2003).

8.   Attached as Appendix 8 is a true copy of selections from Defendant Eli Lilly and Company's Rule 26(a)(2) disclosures in <u>Pace v. Eli Lilly and Co.</u>, No. 07-635 (D.D.C.), dated February 11, 2008.

9.   Attached as Appendix 9 is a true copy of selected pages from American Drug Manufacturers Association, "Trip Report: Meeting of Representatives of a Group of Drug Manufacturers Interested in Stilbestrol" dated January 28, 1941.

10.  Attached as Appendix 10 is a true copy of selected pages from Eli Lilly and Company's Memorandum of Points and Authorities in Support of Its Motion Pursuant to 28 U.S.C. §1404(a) to Transfer to the Middle District of North Carolina, <u>McClamrock v. Eli Lilly and Co.</u>, No. 02-2383.

11.  Attached as Appendix 11 is a true copy of the Memorandum Opinion and Order in <u>Fastino v. Eli Lilly and Co.</u>, No. 02-02210 (D.D.C. Oct. 8, 2003).

I declare under penalty of perjury that the foregoing is true and correct.

_/s/  Aaron M. Levine_____
Aaron M. Levine

Dated: March 3, 2008

Appendix 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

LAUREN GAIL MILLER,

          Plaintiff,

    v.

ELI LILLY AND COMPANY, et al.,

          Defendants.

CIVIL ACTION No. 03-00896 (HHK)

## DEFENDANTS' MOTION TO TRANSFER
## TO THE NORTHERN DISTRICT OF CALIFORNIA

Defendants Eli Lilly and Company ("Lilly"), Abbot Laboratories, Inc. ("Abbott"),

Bristol-Myers Squibb Company ("Squibb"), Dart Industries, Inc. ("Dart"), GlaxoSmithKline

("Glaxo"), Merck and Company, Inc. ("Merck"), Pharmacia and Upjohn Company

("Pharmacia"), and Premo Pharmaceutical Laboratories, Inc. ("Premo") (collectively, the

"Defendants"), hereby move to transfer this action, pursuant to 28 U.S.C. § 1404(a), to the

United States District Court for the Northern District of California. Defendants base their motion

on the fact that the Northern District of California is a more convenient forum than the District of

Columbia for trying this action based on alleged exposure to the drug DES, the action could have

been brought in the Northern District of California in the first place, and transfer out of a district

with absolutely no connection to the Plaintiff's cause of action is in the interest of justice.

Transfer to the Northern District of California is appropriate for at least the following

reasons:

- Plaintiff Lauren Gail Miller ("Plaintiff") resides in the Northern District of California;
- Plaintiff's Mother, Gail Kendrick Miller, resides in the Northern District of California and Plaintiff's father is deceased;

1

- Plaintiff alleges *in utero* exposure to diethylstilbestrol in the Northern District of California;

- Plaintiff was born in the Northern District of California;

- Although Plaintiff could only identify the location of the pharmacy that allegedly dispensed the product at issue in this case, Plaintiff has identified the dispensing facility as being located in the Northern District of California;

- Dr. Gregory Smith, Plaintiff's mother's prescribing and treating physician, practiced medicine and treated Plaintiff's mother in the Northern District of California;

- All of Plaintiff's gynecological care from the age of menarche to the present has been through the Kaiser Permanente medical group, located in Santa Clara, California which is in the Northern District of California;

- Dr. Edward J. Bailey, Dr. Joseph D'Amico and Dr. Cassius A. Scott, doctors identified as having treated Plaintiff for injuries allegedly caused by *in utero* exposure to diethylstilbestrol, practice in the Northern District of California;

- This case -- like the more than 100 DES cases filed by Plaintiff's counsel in the District of Columbia in the past three years -- has no connection to the District of Columbia except that it was filed here.

WHEREFORE, based on the foregoing reasons and those more fully set forth in the accompanying Memorandum of Points and Authorities in Support of this Motion, Defendants respectfully request this Court to grant their motion to transfer this case to the Northern District of California.

Respectfully submitted,

ELI LILLY AND COMPANY
By its Attorneys:

/s/ Lawrence H. Martin
Lawrence H. Martin
Foley Hoag LLP
1875 K Street, N.W., Suite 800
Washington, D.C., 20006-1238
(202) 223-1200

and

- 2 -

District of Columbia live database - Docket Report
Case 1:07-cv-01887-RCL-AK   Document 16-3   Filed 03/03/2008   Page 4 of 6
Page 1 of 6

CLOSED, TYPE-B

# U.S. District Court
## District of Columbia (Washington, DC)
### CIVIL DOCKET FOR CASE #: 1:03-cv-00896-HHK

MILLER v. ELI LILLY AND COMPANY et al
Assigned to: Judge Henry H. Kennedy
Cause: 28:1332 Diversity-Product Liability

Date Filed: 04/17/2003
Date Terminated: 05/10/2005
Jury Demand: None
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

| Date Filed | # | Docket Text |
|---|---|---|
| 04/17/2003 | 1 | NOTICE OF REMOVAL from Superior Court for the District of Columbia, case number 03-0002013. ( Filing fee $ 150 ) (Attachments: # 1 Exhibit # 2 Exhibit)(bcs, ) (Entered: 04/23/2003) |
| 04/17/2003 | 2 | LCvR 26.1 - CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by ELI LILLY AND COMPANY (bcs, ) (Entered: 04/23/2003) |
| 04/21/2003 | 4 | NOTICE of Appearance by John F. Anderson on behalf of DART INDUSTRIES INC (Anderson. John) (Entered: 04/21/2003) |
| 04/21/2003 | 2 | LCvR 26.1 - CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests *for Dart Industries, Inc.* (Anderson, John) (Entered: 04/21/2003) |
| 04/22/2003 | 5 | NOTICE of Appearance by Aaron M. Levine on behalf of LAUREN GAIL MILLER (Levine, Aaron) (Entered: 04/22/2003) |
| 04/24/2003 | 6 | Preliminary Electronic Case Filing Order. Signed by Judge Henry H. Kennedy on April 24, 2003. (FL, ) (Entered: 04/24/2003) |
| 04/28/2003 | 7 | LCvR 26.1 - CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests (Simonyi, Juli) (Entered: 04/28/2003) |
| 04/28/2003 | 8 | LCvR 26.1 - CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests (Leech, Sidney) (Entered: 04/28/2003) |
| 04/29/2003 | 9 | ORIGINAL FILE. certified copy of transfer order. and docket sheet received from D.C. Superior Court 03ca2013. (bcs, ) (Entered: 05/01/2003) |
| 05/06/2003 | 10 | NOTICE of Appearance by Scott Hu Christensen on behalf of MALLINCKRODT, INC. (Christensen. Scott) (Entered: 05/06/2003) |
| 05/06/2003 | 11 | LCvR 26.1 - CERTIFICATE OF DISCLOSURE of Corporate |

|  |  | Affiliations and Financial Interests *of Mallinckrodt, Inc.* (Christensen, Scott) (Entered: 05/06/2003) |
|---|---|---|
| 05/13/2003 | 12 | NOTICE of Appearance by Kathleen M. Bustraan on behalf of LANNETT COMPANY, INC. (Bustraan, Kathleen) (Entered: 05/13/2003) |
| 05/13/2003 | 13 | LCvR 26.1 - CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests *for Lannett Company, Inc.* (Bustraan, Kathleen) (Entered: 05/13/2003) |
| 09/11/2003 | 14 | LCvR 26.1 - CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests *Amended* (Leech, Sidney) (Entered: 09/11/2003) |
| 10/14/2003 | 15 | NOTICE of Appearance by Juli Zsuzsa Simonyi on behalf of PREMO PHARMACEUTICAL LABORATORIES, INC. (Attachments: # 1 Exhibit Exhibit 1 - Copy of Answer)(Simonyi, Juli) (Entered: 10/14/2003) |
| 10/21/2003 | 16 | NOTICE of Change of Address by John F. Anderson (Anderson, John) (Entered: 10/21/2003) |
| 10/31/2003 | 17 | NOTICE of Appearance by Janet K. Coleman on behalf of GLAXOSMITHKLINE INC (Coleman, Janet) (Entered: 10/31/2003) |
| 10/31/2003 | 18 | LCvR 26.1 - CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests *for GlaxoSmithKline* (Coleman, Janet) (Entered: 10/31/2003) |
| 12/09/2003 | 19 | NOTICE of Change of Address by Lawrence Hedrick Martin (Martin, Lawrence) (Entered: 12/09/2003) |
| 12/23/2003 | 20 | ENTERED IN ERROR.....MOTION to Transfer Case *to the Northern District of California* by ABBOTT LABORATORIES, INC., BRISTOL-MYERS SQUIBB COMPANY, DART INDUSTRIES INC, ELI LILLY AND COMPANY, GLAXOSMITHKLINE INC, MALLINCKRODT, INC., MERCK & COMPANY INC, PHARMACIA & UPJOHN COMPANY, PREMO PHARMACEUTICAL LABORATORIES, INC.. (Attachments: # 1 Affidavit of Howard P. Goldberg# 2 Exhibit A to Goldberg Affidavit# 3 Exhibit B to Goldberg Affidavit# 4 Exhibit C to Goldberg Affidavit# 5 Exhibit D to Goldberg Affidavit# 6 Text of Proposed Order)(Martin, Lawrence) Modified on 12/24/2003 (bcs, ). (Entered: 12/23/2003) |
| 12/24/2003 |  | "NOTICE OF CORRECTED DOCKET ENTRY. Document No. 20 was entered in error and counsel has chosen to refile said pleading to make correcction." (bcs, ) (Entered: 12/24/2003) |
| 12/24/2003 | 21 | MOTION to Transfer Case *to the Northern District of California* by ABBOTT LABORATORIES, INC., BRISTOL-MYERS SQUIBB COMPANY, DART INDUSTRIES INC, ELI LILLY AND COMPANY, GLAXOSMITHKLINE INC, MERCK & COMPANY INC, PHARMACIA & UPJOHN COMPANY, PREMO |

| | | 28, 2004. Official paperless order(FL, ) Modified on 1/28/2004 (FL, ). (Entered: 01/28/2004) |
|---|---|---|
| 01/29/2004 | 30 | NOTICE of Voluntary Dismissal re Lannett Company, Inc. (Levine, Aaron) (Entered: 01/29/2004) |
| 05/05/2004 | | MINUTE ORDER: denying Motion to Transfer Case 21 (Kennedy, Henry) (Entered: 05/05/2004) |
| 05/13/2004 | | Set Hearings: Initial Status Conference set for 8/6/2004 10:15 AM in Courtroom 14 before Judge Henry H. Kennedy. (zrew, ) (Entered: 05/13/2004) |
| 05/14/2004 | 31 | Order for Initial Scheduling Conference. Initial conference set for 8/6/2004, at 10:15 am before Judge Henry H. Kennedy, Jr. Signed by Judge Henry H. Kennedy on May 14, 2004. (FL, ) (Entered: 05/14/2004) |
| 05/28/2004 | 32 | STIPULATION of Dismissal of Dart Industries, Inc. by DART INDUSTRIES INC, LAUREN GAIL MILLER. (Anderson, John) (Entered: 05/28/2004) |
| 06/02/2004 | 33 | NOTICE of Voluntary Dismissal re Merck & Co. with prejudice (Ewert, Elizabeth) (Entered: 06/02/2004) |
| 06/17/2004 | 34 | NOTICE by PHARMACIA & UPJOHN COMPANY Notice to Strike and Enter Appearance of Counsel (Leech, Sidney) (Entered: 06/17/2004) |
| 07/27/2004 | 35 | MEET AND CONFER STATEMENT. (Attachments: # 1 Text of Proposed Order Proposed Scheduling Order)(Levine, Aaron) (Entered: 07/27/2004) |
| 08/06/2004 | | Minute Entry for proceedings held before Judge Henry H. Kennedy : Status Conference held on 8/6/2004. The Court adopts counsel's briefing schedule. Counsel agree to Mediation. Status Conference set for 4/8/2005 at 09:30 AM in Courtroom 14 before Judge Henry H. Kennedy. (Court Reporter Dolores Byers.) (rew, ) (Entered: 08/09/2004) |
| 08/11/2004 | 36 | Scheduling Order: Status conference set for April 8, 2005, at 9:30 a.m., before Judge Henry H. Kennedy, Jr. Signed by Judge Henry H. Kennedy, Jr., on August 11, 2004. (FL, ) (Entered: 08/11/2004) |
| 08/11/2004 | 37 | Order referring action to mediation. Signed by Judge Henry H. Kennedy, Jr., on August 11, 2004. (FL, ) (Entered: 08/11/2004) |
| 08/11/2004 | | Set Deadlines/Hearings: Discovery due by 3/7/2005. Dispositive Motions due by 4/11/2005. Plaintiff Rule 26a2 due by 12/6/2004. Defendant Rule 26a2 due by 1/5/2005. Status Conference set for 4/8/2005 09:30 AM in Courtroom 14 before Judge Henry H. Kennedy. (rew, ) (Entered: 08/11/2004) |
| 01/04/2005 | 38 | RULE 26a2 STATEMENT. (Coleman, Janet) (Entered: 01/04/2005) |
| 01/04/2005 | 39 | NOTICE of Appearance by Elizabeth Ewert on behalf of PHARMACIA & UPJOHN COMPANY (Ewert, Elizabeth) (Entered: 01/04/2005) |

Appendix 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CELIA ROING, DIANE MULLEN,  )
and ELAINE PHILBRICK,  )
    )
    )
        Plaintiffs,  )        Civil Action No. 02-2211 (JDB)
    )
    v.  )
    )
ELI LILLY AND COMPANY,  )
    )
        Defendant.  )

## ORDER

Plaintiffs, who all reside in Massachusetts, have filed this diversity action alleging they

were exposed in utero to diethylstilbestrol ("DES") in Massachusetts. Defendant Eli Lilly and

Company ("defendant") has moved to transfer the case to the District of Massachusetts, pursuant

to 28 U.S.C. § 1404(a), asserting that Massachusetts is a more convenient forum than the District

of Columbia, the action could have been brought in Massachusetts originally, the action has no

connection to the District of Columbia, and transfer thus would be in the interest of justice.

Following six other judges of this Court who have denied similar motions in DES cases

against Eli Lilly, the Court denies defendant's motion. The Court agrees that this action could

have been brought in the District of Massachusetts. However, the convenience of the parties and

witnesses, and the interest of justice, do not warrant transfer. See 28 U.S.C. §1404(a).

Plaintiffs' choice of forum is entitled to some weight, although it is given less deference

when the chosen forum is not the plaintiff's home forum. See Piper Aircraft v. Reyno, 454 U.S.

235, 255-56 (1981); Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001). On the other

hand, defendant has engaged in some lobbying and other efforts related to DES in the District of

Columbia. Moreover, it is the forum of choice for many DES cases against Eli Lilly, and even

has been the forum of choice by Eli Lilly for its litigation against insurers regarding coverage for

DES claims.[1] The location of fact and particularly expert witnesses all around the country does

not clearly favor Massachusetts over the District of Columbia. Finally, it is undisputed that

plaintiffs and defendant both have counsel in the District of Columbia experienced in handling

this type of litigation, and that those counsel have cooperated in numerous other DES cases in the

District of Columbia with respect to making witnesses and documents (including medical

records) readily available. In short, the relevant factors do not weigh clearly in favor of transfer

to the District of Massachusetts.

    Accordingly, upon consideration of defendant's motion to transfer and plaintiffs'

opposition thereto, and having assessed the convenience of the parties and witnesses as well as

the interest of justice, it is this ____ day of January, 2003, hereby

    ORDERED that defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) is

DENIED.

_____

JOHN D. BATES
United States District Judge

_____

[1] Eli Lilly opposed a motion to transfer in that case, defending its right to choose the
District of Columbia courts against allegations that it was engaged in forum shopping.

Appendix 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                      *
NANCY PETERSON,                       *
                                      *
          Plaintiff,                  *
                                      *          CASE NO..1:01CV01404 (ESH)
     v.                               *
                                      *
ELI LILLY AND COMPANY,                *
                                      *
          Defendant.                  *
                                      *
* * * * * * * * * * * * * * * * * * * * * * * *
```

## MOTION OF DEFENDANT ELI LILLY
## AND COMPANY TO TRANSFER ACTION

Defendant Eli Lilly and Company ("Lilly") hereby moves to transfer this action, pursuant to 28 U.S.C. § 1404(a), to the District of Massachusetts. Lilly bases its motion on the fact that the District of Massachusetts is a more convenient forum than the District of Columbia, the action could have been brought in the District of Massachusetts in the first place, and transfer out of a district with absolutely no connection to the Plaintiff's cause of action is in the best interests of justice.

More specifically, Plaintiff resides in the District of Massachusetts and alleges that she was exposed in utero to diethylstilbestrol in the District of Massachusetts. Lilly has reason to believe that almost all fact witnesses either reside in or are subject to the subpoena power of the District of Massachusetts. The interests of justice will not be served by burdening the citizens of the District of Columbia with a case that has no connection to the forum, and therefore transfer to the far more convenient District of Massachusetts forum is appropriate.



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NANCY PETERSON,                          )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )    Case No. 1:01 CV01404 (ESH/AK)
                                         )    Next Event:  Defendant's 26(a)(2)
ELI LILLY AND COMPANY                    )    Statement Due on January 21, 2002
                                         )
            Defendant.                   )

### ORDER

Upon consideration of Plaintiff's Opposition to Defendant's Motion to Transfer, and for

good cause shown, it is this 9 ____ day of __January____, 2002.

ORDERED that Defendant's Motion to Transfer be and hereby is DENIED;

AND IT IS FURTHER ORDERED that this case shall remain in the United States

District Court for the District of Columbia and shall not be transferred.

_____
Judge

Copies to:

Aaron M. Levine, Esq.                    James J. Dillon, P.C.
Aaron M. Levine & Associates             Goodwin Procter LLP
1320 - 19th Street, N.W., Suite 500      Exchange Place
Washington, D.C.  20036                  Boston, MA  02109

Thomas M. Hefferon, P.C.
Goodwin Procter LLP
1717 Pennsylvania Avenue, NW
Washington, DC  20006





Appendix 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

DOREEN SCARAMUZZI, as
Mother and Next Friend of
HARRY J. SCARAMUZZI, III, a Minor,

       Plaintiffs,

       CASE NO. 1:01CV01095 (EGS/AK)

      v.

ELI LILLY AND COMPANY,

       Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION OF DEFENDANT ELI LILLY
## AND COMPANY TO TRANSFER ACTION

Defendant Eli Lilly and Company ("Lilly") hereby moves to transfer this third generation

DES products liability action, pursuant to 28 U.S.C. § 1404(a), to the District of Rhode Island.

Lilly bases its motion on the fact that the District of Rhode Island is a more convenient forum

than the District of Columbia, the action could have been brought in the District of Rhode Island

in the first place, and transfer out of a district with absolutely no connection to the Plaintiffs'

cause of action is in the best interests of justice, particularly where the case raises novel issues

under Rhode Island law.

More specifically, Plaintiffs reside in the District of Rhode Island, Ms. Scaramuzzi

alleges that she was exposed in utero to diethylstilbestrol in the District of Rhode Island, and

Harry Scaramuzzi was born in the District of Rhode Island. Lilly has reason to believe that

almost all fact witnesses either reside in or are subject to the subpoena power of the District of

Rhode Island. Further, and importantly, Rhode Island substantive law will govern this third

generation DES action and no Rhode Island court has yet had the opportunity to address the

viability of such a claim. The interests of justice will not be served by burdening the citizens of

the District of Columbia with a case that has no connection to the forum. Nor will the interests

of justice be served by asking a District of Columbia Court to rule on novel issues under Rhode

Island law when a transfer to Rhode Island is possible and far more convenient. Therefore,

transfer to the District of Rhode Island forum is appropriate.

WHEREFORE, based on the foregoing reasons and those more fully set forth in the

accompanying Memorandum of Points and Authorities in Support of this Motion, Lilly

respectfully requests this Court to grant its motion to transfer this case to the District of Rhode

Island.

GOODWIN PROCTER LLP

By: _____
Thomas M. Hefferon, P.C. (#461750)
Ellen M. Quattrucci (#462103)
GOODWIN PROCTER LLP
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 974-1000

and

James J. Dillon, P.C.
Andrea L. Studley
Daniel J. Pasquarello
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109
(617) 570-1000
Attorneys for Defendant
Eli Lilly and Company

DATED: December _____, 2001

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DOREEN SCARAMUZZI, as mother,  )
and next friend of             )
HARRY J. SCARAMUZZI, III,      )
a minor,                       )
                Plaintiffs,    )     Civil Action No.: 01-1095
                               )     (EGS) [10]
        v.                     )
                               )
ELI LILLY AND COMPANY,         )
                Defendant.     )
                               )

FILED

JAN 0 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### ORDER

Upon consideration of defendant's motion to transfer, counsels' representations at the December 7, 2001 status hearing, and the fact that the parties have already engaged in substantial discovery, it is hereby

ORDERED that defendant's motion to transfer is DENIED without prejudice.

12/15/01
DATE

Emmet G. Sullivan
United States District Judge

Appendix 5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
HILLARY BLANK and MARC BLANK,  )
                               )
     Plaintiffs,               )
                               )
v.                             )   Civil Action No. 02-1976 (RWR)
                               )
ELI LILLY AND COMPANY,         )
                               )
          Defendant.           )
_____)
```

### MEMORANDUM OPINION AND ORDER

Plaintiffs Hillary Blank and Marc Blank filed this diversity action alleging that Ms. Blank was exposed *in utero* to diethylstilbestrol ("DES"). Defendant Eli Lilly and Company ("Eli Lilly") has moved to transfer the case to the District of Massachusetts. Because defendant has failed to establish that the convenience of the parties and the witnesses and the interests of justice favor transfer to Massachusetts, defendant's motion will be denied.

### BACKGROUND

Plaintiffs are residents of New Jersey. Eli Lilly is an Indiana pharmaceutical corporation which manufactured and sold DES throughout the United States. Ms. Blank alleges that her mother took DES during pregnancy.

Ms. Blank was born in Massachusetts in 1967. She alleges that, as a result of her mother's use of DES during pregnancy,

- 2 -

she has suffered physical injuries including reproductive
malfunction and infertility.  Ms. Blank also alleges that she has
suffered depression, anxiety and emotional distress.

### DISCUSSION

Defendant has moved to transfer this case to Massachusetts
pursuant to 28 U.S.C. § 1404(a)(2000), which provides that "[f]or
the convenience of parties and witnesses, in the interest of
justice, a district court may transfer any civil action to any
other district or division where it might have been brought."
The moving defendant "bears the burden of demonstrating that
transfer pursuant to Section 1404(a) is warranted." Gemological
Institute of America v. Thi-Dai Phan, 145 F. Supp. 2d 68, 71
(D.D.C. 2001).  Section 1404(a) grants district courts broad
discretion to transfer cases, but they must "adjudicate such
motions according to an 'individualized, case-by-case
consideration of convenience and fairness.'" Gemological
Institute, 145 F. Supp. 2d at 71 (citing Stewart Organization,
Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).

The Court must first determine whether venue and personal
jurisdiction are proper in the transferee district. Lamont v.
Haig, 590 F.2d 1124, 1131 n.45 (D.C. Cir. 1978); see also Relf v.
Gasch, 511 F.2d 804, 806 (D.C. Cir. 1975) (holding that the

- 3 -

district court may transfer a case only to a judicial district where the case might have been brought).

Once a court makes this determination, it must then "balance a number of case-specific factors which include the private interests of the parties as well as public interests such as efficiency and fairness." Wilderness Society v. Babbitt, 104 F. Supp. 2d 10, 12 (D.D.C. 2000). On the private side of the balance, these factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the districts; and (6) the ease of access to sources of proof. Id. The factors on the public side of the balance include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of both the transferor and transferee courts; and (3) the local interest in deciding local controversies at home. Id.

I.   Venue in the District of Massachusetts

"A civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought . . . in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .." 28 U.S.C.

- 4 -

§ 1391(a)(2). Plaintiff alleges that her *in utero* exposure to DES occurred during her mother's pregnancy in Massachusetts.

A federal court in Massachusetts would be able to assert personal jurisdiction over Eli Lilly based on plaintiff's allegations that the company sold DES to plaintiff's mother in Massachusetts. See Mass. Gen. Laws ch. 223A, § 3 (Massachusetts long-arm statute governing torts allegedly committed in Massachusetts). Because venue and personal jurisdiction would be proper in the District of Massachusetts, this case is one which might have been brought there.

II. Private Factors

Typically, the plaintiff's choice of forum is given considerable weight, but it is entitled to "substantially less deference when the forum preferred by the plaintiff is not his home forum." Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001) (citing Piper Aircraft v. Reyno, 454 U.S. 235, 255-56 (1981)). In this case, plaintiffs are not residents of their chosen forum, but plaintiffs argue that much of defendant's lobbying efforts before the Food and Drug Administration ("FDA") occurred in the District of Columbia. Defendant's choice of another forum is undermined by the fact that defendant chose the District of Columbia as the forum for its own litigation against insurers regarding coverage for DES claims and opposed the

- 5 -

insurers' motion to transfer the case to another forum.  See Eli
Lilly's Memorandum in Opposition to Motion to Transfer, Exh. 4 to
Plaintiffs' Opposition to Defendant's Motion to Transfer.  The
balance tips slightly in favor of this district, then, when
weighing the parties' choices of fora.

Defendant maintains that plaintiffs' claim arose in
Massachusetts where Ms. Blank's *in utero* exposure occurred.
Plaintiffs argue that their claim also arose in part from Eli
Lilly's lobbying efforts in the District of Columbia to obtain
FDA approval for DES.  This factor favors neither district.

Defendant has not shown that the convenience of the parties
and their witnesses favors transfer to Massachusetts.  There is
only one witness who lives in Massachusetts and that witness will
appear without subpoena at a mutually-convenient location.  At
least one of plaintiffs' expert witnesses is in this district.
No medical records of Ms. Blank's are in Massachusetts.  There
has been no showing that holding trial in the District of
Columbia would impede the parties' access to evidence.

Defendant has failed to show that the private factors weigh
in favor of transferring this case to Massachusetts.

III. Public Factors

The "interests of justice are best served by having a case
decided by the federal court in the state whose laws govern the

- 6 -

interests at stake." <u>Kafack v. Primerica Life Insurance Co.</u>, 934 F. Supp. 3, 8 (D.D.C. 1996). In this case, however, it has yet to be determined which state or district's law will govern the dispute. There is no evidence regarding the relative congestion of the district courts of the District of Columbia and Massachusetts, and neither the District of Columbia nor Massachusetts has a strong local interest in this controversy. Defendant has failed to show that the public factors favor transfer.

<u>CONCLUSION</u>

Defendant has failed to show that the convenience of the parties and the witnesses and the interests of justice favor transfer to Massachusetts. Accordingly, it is hereby

ORDERED that defendant's motion to transfer [7] be, and hereby is, DENIED.

SIGNED this 13th day of December, 2002.

RICHARD W. ROBERTS
United States District Judge

Appendix 6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SUZANNE R. ROBINSON et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-153 (RWR) |
| | ) | |
| ELI LILLY AND COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

In this case involving claims for negligence and product liability, among others, defendant Eli Lilly and Company ("Lilly") has moved to transfer the action to the United States District Court for the District of Massachusetts for the convenience of the parties and witnesses, in the interest of justice. Plaintiffs Suzanne and Joseph Robinson ("the Robinsons") oppose the transfer. Because Lilly has not demonstrated that the balance of private and public interests weighs in favor of transfer, the motion will be denied.

### BACKGROUND

The complaint alleges that Suzanne Robinson ("Suzanne") was exposed to diethylstilbestrol ("DES") in utero, resulting in "uterine and cervical malformations, miscarriage, infertility, inability to carry a child to term, . . . medical expenses for care and treatment, . . . physical and mental pain," deprivation of "the family she desired" (Compl. ¶ 4), and loss of consortium

-2-

for her husband, Joseph Robinson. Lilly, an Indiana corporation, allegedly failed to adequately "test" DES, failed "to heed and report adverse studies regarding the safety and efficacy of DES," failed to "warn" of its dangers, and "over-promot[ed]" the drug which was an unreasonably dangerous and defective drug when used for its advertised and intended purpose. (Id. ¶¶ 5, 7, 10.) According to the complaint, in order to obtain approval to market the drug, Lilly "met with and conspired with numerous pharmaceutical manufacturers" and "spear-headed industry-wide conferences . . . to seek approval of DES by Joint Submission, withholding from the Food and Drug Administration reports questioning the efficacy of DES and studies raising serious questions of safety. These meetings, conferences and agreements occurred in the District of Columbia." (Id. ¶ 2.)

Suzanne's mother lived in Massachusetts when she was pregnant with Suzanne. She purchased and ingested the DES in Massachusetts and still lives there. On pain of dismissal, the plaintiffs have guaranteed her availability at trial in the District of Columbia. The physician who prescribed DES to Suzanne's mother is deceased. Suzanne was born in Massachusetts and lived there a substantial part of her life. Two of Suzanne's former gynecologists, Doctors Kenler and Villanueva, also reside in Massachusetts, but these doctors treated her before she was aware of her alleged DES-related injuries.

-3-

The Robinsons now live in Connecticut.  The two physicians who most recently have provided gynecological care and treatment to Suzanne and are most familiar with her injuries and symptoms, Doctors Sheets and Flaherty, reside in Connecticut.  The Connecticut doctors may be within the subpoena power of the district court in Massachusetts,[1] but the plaintiffs have guaranteed that the doctors will appear at trial in the District of Columbia.

The likely expert witnesses for the parties are dispersed across several states along the eastern seaboard and in Kansas.  Medical records for Suzanne and her mother, and documents relating to Lilly's conduct in lobbying, promoting and seeking FDA approval for DES are also dispersed in multiple locations around the country.

## DISCUSSION

A court may transfer a case "for the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  The moving party has the burden of persuasion, and must show that transfer is "'justified by particular circumstances that render the transferor forum inappropriate by reference to the considerations specified in that statute.'"  SEC v. Savoy Indus. Inc., 587 F.2d 1149, 1154 (D.C. Cir. 1978) (quoting Starnes v.

---

[1]  The parties dispute whether Dr. Sheets' office falls just within or just outside of the 100 mile subpoena reach of the United States District Court for the District of Massachusetts.

-4-

McGuire, 512 F.2d 918, 925 (1974)).  A court has broad discretion
to decide whether transfer from one jurisdiction to another is
warranted for the convenience of the parties and witnesses.  Id.

Any transfer under § 1404(a) is restricted to a venue where
the action "might have been brought."  See 28 U.S.C. § 1404(a).
After determining that venue in the proposed transferee district
would be proper, a court then "must weigh in the balance the
convenience of the witnesses and those public-interest factors of
systemic integrity and fairness that, in addition to [the]
private concerns [of the parties], come under the heading of 'the
interest of justice.'"  Stewart Org. Inc. v. Ricoh Corp., 487
U.S. 22, 30 (1988).  Because "it is perhaps impossible to develop
any fixed general rules on when cases should be transferred[,]
. . . the proper technique to be employed is a factually
analytical, case-by-case determination of convenience and
fairness."  Savoy Indus., 587 F.2d at 1154  (internal quotation
marks and citations omitted).  Private interest factors to
consider typically include things such as each party's choice of
forum, where the claim arose, the convenience of the parties, the
convenience of the witnesses, particularly if important witnesses
may actually be unavailable to give live testimony in one of the
trial districts, and the availability and ease of access to
sources of proof.  Montgomery v. STG Int'l, Inc., Civil Action
No. 07-1240 (RWR), 2008 WL 25012, at *2 & n.5 (D.D.C. Jan. 30,

-5-

2008).  Public interest factors may include the local interest in
making local decisions about local controversies, the potential
transferee court's familiarity with the applicable law, and the
congestion of the transferee court compared to that of the
transferor court.  <u>Akiachak Native Community v. Dep't of the
Interior</u>, 502 F. Supp. 2d 64, 67 (D.D.C. 2007).

I.   VENUE IN MASSACHUSETTS

     There is no dispute that this diversity jurisdiction action
could have been brought in the District of Massachusetts.  <u>See</u> 28
U.S.C. § 1391(a)(1) and (2) (venue may lie where the sole
defendant resides, or where "a substantial part of the events or
omissions giving rise to the claim occurred"); <u>see also</u> 28 U.S.C.
1391(c) (defining residency for purposes of venue).

II.  PRIVATE FACTORS

     A plaintiff's choice of forum, generally accorded
substantial weight, is due less deference when it is not the
plaintiff's home forum.  <u>Friends for All Children, Inc. v.
Lockheed Aircraft Corp.</u>, 717 F.2d 602, 605 n.5 (D.C. Cir. 1983)
(noting that deference to the plaintiff's choice is diminished
when it is not the home forum) (quoting <u>Piper Aircraft Co. v.
Reyno</u>, 454 U.S. 235, 255-56 (1981)).  The District of Columbia is
not the Robinsons' home forum, and their choice is thus not
entitled to overriding deference.

-6-

The weight given a plaintiff's choice is further diminished
if the chosen forum has "no meaningful ties to the controversy
and no particular interest in the parties or subject matter."
Nat'l Wildlife Federation v. Harvey, 437 F. Supp. 2d 42, 46
(D.D.C. 2006) (internal quotation marks and citation omitted).
Lilly contends that the District of Columbia has "absolutely no
connection" to the controversy.  (Mot. at 1.)  The Robinsons
counter that the District of Columbia is the location of the
defendant's tortious conduct that led to government approval of
DES and eventually to Suzanne's injuries.  (Opp'n at 10.)  Thus,
the Robinsons' allegations involve nearly as much connection to
this forum as they do to the District of Massachusetts.
Accordingly, the Robinsons' choice of forum is due some
deference, although not as much as it would be due if this forum
were also their home forum.

Lilly maintains that the Robinsons' claims arose in
Massachusetts where Suzanne's in utero exposure occurred.  The
Robinsons argue that their claims arose in part from Lilly's
tortious lobbying efforts in the Dsitrict of Columbia to obtain
FDA approval for DES.  This factor favors neither district.

Lilly has not shown that the convenience of the parties
favors transfer to Massachusetts.  The Robinsons selected this
forum, and Lilly has neither articulated nor demonstrated

Case 1:07-cv-00153-RWR-DAR   Document 20   Filed 02/26/2008   Page 7 of 23

-7-

hardship for it as a corporate party to have to travel to this district for these proceedings.

In this case, there is no single forum convenient to all or a majority of identified or critical witnesses.  Potential key fact and expert witnesses reside in several states along the East Coast from Massachusetts to Florida, and elsewhere.  On pain of default, the Robinsons have guaranteed the appearance of critical witnesses for the plaintiffs who may be beyond the subpoena power of this court.  By contrast, Lilly has presented no evidence that any lay or expert witnesses will refuse to appear in this district for trial or cannot have their testimony preserved by videotaped deposition.  Thus, the availability of, or ease of access to, sources of testimonial proof is no better in the District of Massachusetts than it is here.  There is no claim that any of the experts' availability hinges on the forum chosen.  There is no indication that any relevant medical records or other documents have not already been produced or made available to the parties, or that documents will be more readily available if the case is transferred.  In sum, Lilly has not made a convincing case that this forum is inappropriate or that the District of Massachusetts will be, on balance, a more convenient forum even for the witnesses who are beyond the subpoena power of either district.  See Savoy Indus., 587 F.2d at 1154 (stating that

-8-

movant must show that the transferor forum is "inappropriate by reference to the considerations specified" in § 1404(a)).

III. PUBLIC FACTORS

Lilly, asserting that Massachusetts substantive law will govern the claims, argues that because a federal court in Massachusetts is likely to have more familiarity with the law to be applied, this factor weighs in favor of transfer. The Robinsons maintain that it is not clear which jurisdiction's substantive law will apply.

Whether the case is transferred or not, the District of Columbia's choice of law rules will apply. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941) (holding that a federal court exercising diversity jurisdiction must follow the choice of law rules of the forum state); Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) (holding that a transferee court must apply the state law that would have been applied if there had been no change of venue). As the District of Columbia's highest court has explained that

> [i]n determining which jurisdiction's law to apply in a
> tort case, we use the "governmental interests"
> analysis, under which we evaluate the governmental
> policies underlying the applicable laws and determine
> which jurisdiction's policy would be more advanced by
> the application of its law to the facts of the case
> under review. As part of this analysis we also
> consider the four factors enumerated in the Restatement
> (Second) of Conflict of Laws § 145 [1971]: (a) the
> place where the injury occurred; (b) the place where
> the conduct causing the injury occurred; (c) the
> domicile, residence, nationality, place of

-9-

> incorporation and place of business of the parties; and
> (d) the place where the relationship is centered. . . .
> When both jurisdictions have an interest in applying
> their own laws to the facts of the case, the forum law
> will be applied unless the foreign jurisdiction has a
> greater interest in the controversy.

Drs. Groover, Christie & Merritt v. Burke, 917 A.2d 1110, 1117

(D.C. 2007) (quotation marks, brackets in the original, and

citations omitted). In the District of Columbia, when "the

location of the injury may be described as 'fortuitous,'" the

place where the injury occurred does not compel the outcome in

the choice of law. Kaiser-Georgetown Cmty. Health Plan, Inc., v.

Stutsman, 491 A.2d 502, 508 (D.C. 1985). See also Restatement

(Second) Choice of Laws § 145 cmt on subsec. (2) (noting

situations where the place of injury will not be key to the

selection of the applicable law, such as when "the place of

injury can be said to be fortuitous or when . . . it bears little

relation to the occurrence and the parties with respect to the

particular issue," when it is a "case of fraud and

misrepresentation," where "there may be little reason in logic or

persuasiveness to say that one state rather than another is the

place of injury," or when "the defendant had little, or no,

reason to foresee that his act would result in injury in the

particular state").

The theory of the torts alleged here places the injury in

Massachusetts, but the tortious conduct in the District of

Columbia and perhaps also at Lilly's headquarters in Indiana.

-10-

While it is possible that Massachusetts substantive law will
apply, it is as likely at this stage that District of Columbia
substantive law will apply given the plaintiffs' theory of
tortious conduct occurring in this jurisdiction.  On the facts
alleged here, Lilly has not shown that it is more likely than not
that the transferee forum would have more familiarity with the
applicable law.

Local interest in deciding local controversies is a factor a
court may take into consideration in making a transfer
determination.  Lilly has assumed that the place of injury
defines the local interest, and argues that Massachusetts, but
not the District of Columbia, has an interest in this
controversy.  The Robinsons, citing Ingram v. Eli Lilly & Co.,
251 F. Supp. 2d 1, 6 (D.D.C. 1996), argue that there is nothing
uniquely local about DES cases sufficient to return a DES case to
the district where the DES was ingested.  The particular facts of
the tort alleged prevent interest in this controversy from being
local or centered in just one district.  Taking the allegations
here at face value, Massachusetts' interest in this controversy
was arguably at it greatest more than 40 years ago, at the time a
baby female was born with uterine and cervical abnormalities that
would prevent her from ever bearing a child.  Even at that point,
however, either the District of Columbia, where the alleged
conspiracy to over-promote and conceal adverse studies occurred,

-11-

or Indiana, the site of Lilly's headquarters, may have had an equally strong interest in this case. Now, even Connecticut has an arguable interest, given that the alleged tort victims reside there. Lilly has not shown that this forum is an inappropriate choice compared to the District of Massachusetts with respect to the local interest in this case.

Neither party has addressed the relative docket congestion of the respective fora, leaving this factor favoring neither district.[2]

CONCLUSION AND ORDER

The Robinsons' chosen forum is not their home, but one in which significant portions of the alleged tortious conduct occurred. Their forum choice is entitled to some, albeit not overriding, deference. Lilly has not demonstrated, in light of the particular facts alleged, that this forum is inappropriate for the convenience of the parties and witnesses, or that the balance of private and public interests warrants transferring this case to the District of Massachusetts. Accordingly, it is hereby

---

[2] Both parties mentioned the experience and expertise of Magistrate Judge Alan Kay of this district in mediating and settling DES cases. This factor would not weigh in favor of transferring this case to the District of Massachusetts.

-12-

ORDERED that Lilly's motion [16] to transfer venue to the United States District Court for the District of Massachusetts be, and hereby is, DENIED.

SIGNED this 26th day of February, 2008.

_____/s/_____

RICHARD W. ROBERTS
United States District Judge

Appendix 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARRIE DIMANCHE and
STEVE DIMANCHE,

     Plaintiffs,

       v.

ELI LILLY AND COMPANY,

     Defendant.

Civil Action No.  03-0236 (JDB)

## ORDER

      Carrie and Steve Dimanche ("plaintiffs") filed this action in the Superior Court for the District of Columbia seeking compensatory and punitive relief for injuries associated with Mrs. Dimanche's alleged in utero exposure to diethylstilbestrol ("DES").  Eli Lilly and Company ("defendant") removed the case to this Court on February 13, 2003.  After discovery had begun, defendant moved to transfer the case to the District of Massachusetts, where plaintiffs reside, or alternatively, to the District of Connecticut, where the events giving rise to their injuries allegedly occurred.  Following eight other judges of this Court who have denied similar motions in DES cases against defendant, the Court denies defendant's motion to transfer.

      Pursuant to 28 U.S.C. § 1404(a), "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  A party seeking a transfer must show that the "balance of convenience of the parties and witnesses and the interest of justice are in [its] favor." Armco Steel Co. v. CSX Corp., 790 F. Supp. 311, 323 (D.D.C. 1991) (quoting Consol. Metal

-1-

Prods., Inc. v. Am. Petroleum Inst., 569 F. Supp. 773, 774 (D.D.C. 1983)). Factors to be

considered in determining whether to grant a motion to transfer include ease of access to sources

of proof, the availability of compulsory process to compel the attendance of unwilling witnesses,

the amount of expense for willing witnesses, and other practical aspects of expeditiously and

conveniently conducting a trial. See SEC v. Page Airways, 464 F. Supp. 461, 463 (D.D.C. 1978).

Furthermore, district courts have a "local interest in deciding local controversies at home." Trout

Unlimited v. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996). If the particular controversy has

meaningful ties to the plaintiff's chosen forum and the plaintiff is a resident of that forum, the

plaintiff's choice is given substantial deference, see Wilderness Soc'y v. Babbit, 104 F. Supp. 2d

10, 12-13 (D.D.C. 2000), and the moving party "bear[s] a heavy burden of establishing that

plaintiffs' choice of forum is inappropriate." Pain v. United Tech. Corp., 637 F.2d 775, 784 (D.C.

Cir. 1980). But where the lawsuit has no factual nexus with the chosen forum, the plaintiff's

election may be accorded less weight. See Piper Aircraft v. Reyno, 454 U.S. 235, 255-56 (1981);

Trout Unlimited, 944 F. Supp. at 17; Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C.

2001).

      Here, even if plaintiffs' choice of forum is shown little deference, defendant has

failed to demonstrate that the convenience of the parties and witnesses and the interest of justice

would be served by a transfer of venue. Plaintiffs' chosen forum is, indeed, neither their home

jurisdiction nor the site of the principal events giving rise to their claims. But plaintiffs submit

that their claims have a factual nexus to the District of Columbia in that defendant has engaged in

lobbying and other efforts to promote DES here. Additionally, while the substantive law of

Connecticut will govern this case, plaintiffs note that the case is likely to pose issues of District of

Columbia procedural law. And although many of the fact witnesses reside in Massachusetts or Connecticut, defendant does not dispute that the expert witnesses in this case hail from New Jersey, Alabama, Maryland, Texas, Arkansas, and Pennsylvania. Defendant's motion would be more compelling if the anticipated witnesses were more geographically clustered around the proposed alternative venues. Finally, any concerns about the availability of compulsory process in this jurisdiction are mitigated by the fact that plaintiffs and defendant both have counsel in the District of Columbia experienced in handling this type of litigation, and that those counsel have cooperated in numerous other DES cases here with respect to making witnesses and documents readily available.

Thus, upon consideration of defendant's motion to transfer and plaintiffs' opposition thereto, and having assessed the convenience of the parties and witnesses as well as the interest of justice, it is hereby

ORDERED that defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) is DENIED.

_____/s/_____
JOHN D. BATES
United States District Judge

Signed this 17th day of October, 2003.

-3-

Copies to:

**Aaron M. Levine**
AARON M. LEVINE & ASSOCIATES, P.A.
1320 19th Street, NW
Suite 500
Washington, DC 20036
(202) 833-8040
(202) 833-8046
aaronlevinelaw@aol.com


**Lawrence Hedrick Martin**
FOLEY HOAG LLP
1747 Pennsylvania Avenue, NW
Suite 1200
Washington, DC 20006
(202) 223-1200
(202) 785-6687
lmartin@foleyhoag.com

-4-

Appendix 8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DIEDRA PACE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:07-cv-00635-RMU |
| | ) | |
| ELI LILLY AND COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT ELI LILLY AND COMPANY'S
## EXPERT WITNESS DISCLOSURES

Defendant Eli Lilly and Company ("Lilly"), as its expert witness disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(B), hereby designates the expert witnesses it presently expects to call to testify at trial. Lilly has not made a final decision on which witnesses it will call to give expert testimony at the trial of this case. Lilly reserves the right to designate additional experts and/or to ask any of the witnesses designated herein to expand the scope and/or nature of his or her testimony as described herein in response to the nature and scope of the expert testimony offered by plaintiff and to the extent other facts are developed through further investigation. Lilly also reserves the right to call and elicit expert testimony from any of plaintiff's health care providers. Subject to these qualifications, Lilly may call as expert witnesses the following individuals who are expected to testify substantially as set out below.

      1.    A. Brian Little, M.D.
             Department of Obstetrics and Gynecology
             UMDNJ New Jersey Medical School
             185 S. Orange Avenue, MSB E506
             Newark, New Jersey  07103

Dr. Little is Clinical Professor of the Department of Obstetrics and Gynecology at UMDNJ-New Jersey Medical School in Newark, New Jersey. As set out in his C.V., attached,

2710886v2

cervix. Furthermore, there is no valid epidemiological study linking DES exposure and clear cell adenocarcinoma of the cervix in women over the age of 30. He will further testify, therefore, that Mrs. Pace's clear cell adenocarcinoma of the cervix cannot be attributed, to a reasonable degree of scientific certainty, to her alleged *in utero* DES exposure.

Dr. Mundt may expand or modify his testimony based on additional discovery and opinions offered by Mrs. Pace's expert witnesses.

6.     Dr. Don Carlos Hines

Dr. Don Carlos Hines is deceased. His expert testimony will be offered by videotaped deposition. Dr. Hines received his degree in medicine from Stanford University in 1930 and had a private practice in California until 1939. At that time, he joined Lilly Research Laboratories as a physician in the Medical Department, holding that position until 1951, at which time he was promoted to the head of the Medical Department. In 1953, Dr. Hines was promoted to Director of the Medical Division. He retired from Eli Lilly and Company in 1967. A copy of Dr. Hines' C.V. is attached.

Dr. Hines' work at Lilly Research Laboratories did include the initiation and monitoring of clinical investigations and the supervision of others who performed this kind of activity. Special attention in this position was paid to the toxicity and side effects of drugs. Because of his special interest in endocrinology, he was an early participant in the supervision and evaluation of diethylstilbestrol and was one of the main participants in the collating of early diethylstilbestrol data toward the FDA submission and approval. He continued to read the available medical literature on endocrinology, diethylstilbestrol and any materials on the side effects of drugs up to his retirement. Because of his expertise and interest, he was responsible for this knowledge and the evaluation of this medical literature at Eli Lilly and Company.

2710886v2

The videotaped deposition of Dr. Hines that Lilly expects to offer relates to historical and factual matters, including his function as a physician in the Medical Department of Eli Lilly and Company and as to the development, testing, and FDA approval of diethylstilbestrol for use in nonpregnant and pregnant women. Dr. Hines will further discuss the medical literature that was available to Lilly in the relevant time period.

Lilly may further offer the testimony of Dr. Hines that the prevailing medical opinion regarding the use of estrogenic substances was that they were safe for use in obstetrical patients. The testimony offered may also include comments on the general medical opinion about the relevancy of the animal experiences with estrogen to the experience in humans and the known side effects of diethylstilbestrol during the relevant time period Dr. Hines' testimony concerning the effectiveness of diethylstilbestrol may also be offered if efficacy is at issue. Additional areas of testimony will be identified and disclosed as necessary. Lilly will provide a copy of the transcript of Dr. Hines' videotape deposition in advance of trial at plaintiff's request.

7.     Dr. Theodore G. Klumpp

Dr. Theodore G. Klumpp is deceased. His expert testimony will be offered by videotaped deposition. Dr. Klumpp was a physician who was an Assistant Clinical Professor at Yale University Medical School and Chief of the Hematological Clinic and Director of the Medical Laboratory at the New Haven Hospital, from which he took a leave of absence to become the Chief Medical Officer of the FDA, eventually becoming Chief of the Drug Division of the FDA. He then served as Director of the Division of Drugs, Food and Physical Therapy and Secretary of the Council on Pharmacy and Chemistry for the American Medical Association. His C.V. is attached.

During his tenure as Chief of the Drug Division of the FDA, he became familiar in detail with the Food, Drug and Cosmetic Act of 1906, as amended in 1938, and its

2710886v2

requirements concerning the filing of new drug applications, or "NDAs." During the time he was in that position, various NDAs for the use of diethylstilbestrol for non-pregnancy purposes were filed and ultimately approved. He was familiar with the background and details of this approval process because of his responsibility as Chief of the Drug Division at the FDA.

Dr. Klumpp's testimony should include a discussion of factual and historical matters, including his knowledge of, and role in, the approval process of NDAs for use of diethylstilbestrol. Dr. Klumpp's testimony will also discuss his familiarity with the background of the approval process. A copy of the transcript of Dr. Klumpp's videotape deposition will be provided in advance of trial at plaintiff's request.

8.     Dr. Edith L. Potter

Dr. Edith L. Potter is deceased. Her testimony will be presented by videotaped deposition. Dr. Potter was Professor Emeritus of Pathology in the Department of Obstetrics and Gynecology, University of Chicago. From 1927 to 1932, Dr. Potter was in private practice in Minneapolis, Minnesota where she practiced general medicine. She then moved to Chicago where she was a pathologist in the Department of Obstetrics and Gynecology in Chicago's Lying-In Hospital for some 33 years, until her retirement in 1967. She retired as a full professor. A copy of Dr. Potter's C.V. is attached.

Dr. Potter's video deposition testimony Lilly expects to offer concerns her examination of both fetuses and living and non-living infants during the relevant time period. Specifically, she was in charge of the pathology laboratory which examined all available non-surviving infants and fetuses from Chicago's Lying-In Hospital and she also examined surgical specimens from gynecological patients. She was responsible for the microscopic evaluation and diagnosis of infants who died in Chicago and upon whom autopsies were required before they

2710886v2

could be buried. She routinely made rounds with the residents and physicians, particularly examining problem cases in the nursery.

Dr. Potter was involved in the examination of diethylstilbestrol-exposed babies. She examined or consulted on seriously or malformed infants, examined available non-surviving babies and attempted to determine the cause of the pathology involved. This would have included evaluation of the medical records in an attempt to correlate any factor known, including drug exposure, to the problem. Lilly expects it will offer the following testimony of Dr. Potter:

1.  Based upon her personal experience, she observed no harmful effects upon the fetus which were attributed to diethylstilbestrol ingestion by the mother during the relevant pregnancy period.

2.  Based upon her position in the international medical community, her knowledge of the medical literature and reports from other physicians and scientists, it was the prevailing view of the medical community that diethylstilbestrol was safe for use in pregnant women.

3.  That based upon her knowledge and experience and the medical facts available to her, there was no data or information which warned about the possible occurrence of adverse effects in the reproductive tract of the female offspring.

4.  Dr. Potter's testimony may also include statements about the development and structure of the female reproductive tract.

Lilly expects to present the following opinions of Dr. Potter:

a.  That at the time of plaintiff's birth, diethylstilbestrol had not been shown to cause any harm to the baby.

2710886v2

b.      That diethylstilbestrol was believed to be an estrogenic substance, safe to use in pregnancy.

c.      That the prevailing medical opinion was that diethylstilbestrol caused no harm to the baby.

d.      That the injuries alleged by plaintiff to be a result of *in utero* exposure to diethylstilbestrol were unforeseeable. Additional areas of testimony will be identified and disclosed as necessary.

Dr. Potter's opinions were based upon her personal knowledge, training, experience as well as her review of the medical literature, the information which was disseminated through medical meetings and personal consultations with other leading scientists during the relevant time period. A copy of the transcript of Dr. Potter's videotape deposition will be provided in advance of trial at plaintiff's request.

Respectfully submitted,

SHOOK, HARDY & BACON, L.L.P.

Michelle R. Mangrum, D.C. Bar No. 473634
John Chadwick Coots, D.C. Bar No. 461979
SHOOK, HARDY & BACON, L.L.P.
600 14TH Street, N.W., Suite 800
Washington, DC 20005-2004
Phone: (202) 783-8400
Fax: (202) 783-4211

and

2710886v2

David W. Brooks
Jonathan H. Gregor
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Blvd.
Kansas City, Missouri  64108
Phone: (816) 474-6550
Fax: (816) 421-5547

**ATTORNEYS FOR DEFENDANT
ELI LILLY AND COMPANY**

2710886v2

<u>**CERTIFICATE OF SERVICE**</u>

      I certify that a true and correct copy of the above and foregoing was sent via U.S. first-class mail, postage prepaid, on this 11th day of February, 2008 to the following counsel of record:

Aaron M. Levine
AARON M. LEVINE & ASSOCIATES
1320 19th Street NW
Suite 500
Washington, DC 20036
(202) 833-8040
Fax (202) 833-8046

**Attorneys for Plaintiffs**

John Chadwick Cost

ATTORNEY FOR DEFENDANT
ELI LILLY AND COMPANY

2710886v2

Appendix 9

January 30, 1941

Mr. Eli Lilly
Mr. Rhodehenel
Mr. Ratter
Mr. D. R. Miller
Dr. Rice
Mr. R. W. Wheeler
Mr. W. J. Rice
Research File

TRIP REPORT

Meeting of Representatives of a Group of

Drug Manufacturers Interested in Stilbestrol

Hotel Washington, Washington, D. C.

January 28, 1941

This meeting was called by Mr. Carson P. Frailey, Executive Vice
President of the A. D. M. A. as a consequence of the meeting of
various representatives with Dr. James J. Durrett and Mr. W. J.
Campbell of the Federal Food and Drug Administration in Washing-
ton on December 30, 1940.  The purpose of the present meeting was
to resurvey the available scientific evidence regarding Stilbestrol
and to decide what procedure would quickest and most effectively
satisfy the Food and Drug Administration with regard to Stilbes-
trol.  The companies represented were:

| | |
|---|---|
| Eli Lilly and Company | Dr. D. C. Hines |
| E. E. Squibb and Sons | Dr. J. A. Herrell |
| | Dr.        Church |
| Finthrop Chemical Company | Dr. F. J. Stockman |
| | Dr. J. B. Rice |
| Herck & Co., Inc. | Dr. J. H. Carlicle |
| Abbott Laboratories | Mr. Edgar B. Carter |
| The Upjohn Company | Dr. R. Clifford Upjohn |
| Sharp & Dohns, Inc. | Dr. W. A. Foirer |
| John Wyoth & Brother, Inc. | Mr. Ambrose Haasberger, Jr. |
| Charles E. Froust & Co. | Dr. E. Losinski |
| Ayoret, McKenna & Barrison, Ltd. | Mr. Hutchinson |
| A. D. M. A. | Mr. Carson P. Frailey |

- 2 -

Dr. E. A. Sharp of Parke, Davis and Company, and Mr. W. D. O'Connell
of George A. Broon and Company, Inc., were reported to have desired
to come but found themselves unable.

The preliminary discussion was concerned with the attitude of the
Administration, and it was the consensus of opinion emphasized
particularly by Mr. Frailey and Dr. Stockman that the Administra-
tion was extremely desirous of receiving the scientific evidence
on competitive items such as Stilbestrol in the form of a joint
master application containing the scientific evidence from all of
the interested companies. Dr. Stockman pointed out that this pro-
cedure in the case of sulfathiasole had proven very satisfactory
from the point of view of the Administration and the firms involved.

When comments made by Dr. Durrett and Mr. Campbell individually
to various of the persons present were repeated and compared, it be-
came evident that in the case of Stilbestrol the Administration
will insist on extremely detailed case reports and that most of the
articles which have so far been published are inadequate in this
respect. The consensus of opinion was that Stilbestrol will not be
approved until: 1) statements are furnished from the leading
"experts" in the country opining the safety of Stilbestrol and
advocating its release; and 2) sufficiently detailed case reports
and laboratory studies are submitted to provide an obvious basis for
the opinions.

It was agreed that sufficient experimental work had already been
done, that most clinicians were favorable, and that the question
was largely one of obtaining the opinions and case reports in the
proper form. Certain clinicians in New York City seem to be the
only ones opposing the release of Stilbestrol at the present time
and it was felt that if the evidence furnished by other clinicians
could all be presented to them they might alter their stands. Dr.
Stockman and Dr. Rice reported some success in this direction al-
ready in the case of Dr. Ephraim Shorr.

It was also reported that Dr. Durrett had stated emphatically that
the approval of one application would        the approval of all
those on file providing that each applicant could show the identity
of his product with that approved. All the representatives were
willing and anxious to follow the plan of filing a joint applica-
tion with two exceptions. The representatives of Squibb could
promise only that they would pool the data obtained since the last
filing of their application. The matter of pooling information ob-
tained previously was subject to the approval of Dr. John Anderson.
I was not in a position to assure the group of our cooperation and
stated so frankly. It was agreed that none of those joining the
group for joint filing would file an application previous to the
filing of the joint application.

I was chosen temporary chairman of the meeting and despite my pointing

- 3 -

out my possible inability to serve further was made permanent
chairman of the meeting and of the committee which was there ap-
pointed for the purpose of actually getting together the material
for submission. Other members of this committee were Dr. J. A.
Herrell of R. R. Squibb and Sons, Dr. J. B. Rice of Winthrop Chem-
ical Company, and Dr. E. Clifford Upjohn, of The Upjohn Company.
Squibb and Winthrop are apparently extremely anxious to get Stil-
bestrol on the market, so that I feel certain there will be no
dilatory tactics within this committee.

Following the meeting, the small committee met and outlined a
detailed program for gathering the necessary information. This
was expected to involve personal contact with each of twenty-four
men and groups in Boston, New York City, Philadelphia, Baltimore,
Chicago, Madison, St. Louis, and Rochester, Minnesota, the cities
mentioned by Dr. Durrett as containing the key men. It was planned
that the preliminary data would be submitted to me by March 1.

Appendix 10

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BARRY McCLAMROCK.              )
             Plaintiff,        )        Case No. 1:02CV02383
                      )
         v.                       )
                      )
ELI LILLY AND COMPANY          )
             Defendant.        )

## DEFENDANT ELI LILLY AND COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION PURSUANT TO 28 U.S.C. §1404(a) TO TRANSFER TO THE MIDDLE DISTRICT OF NORTH CAROLINA

**I.**       **INTRODUCTION**

Plaintiff. a citizen of Concord. North Carolina, has filed this civil action against Eli Lilly and Company ("Lilly") in the United States District Court for the District of Columbia. seeking to recover monetary damages for alleged personal injuries he claims were caused by Zyprexa®, a prescription anti-psychotic medication manufactured by Lilly.  Lilly moves pursuant to 28 U.S.C. § 1404(a) to transfer this action from the District of Columbia to the United States District Court for the Middle District of North Carolina, Salisbury Division.

Neither the events giving rise to this action. nor any of the witnesses or evidence necessary to resolve it. relate to Washington, D.C.  Plaintiff was prescribed. purchased and ingested Zyprexa® in North Carolina, was injured in his home state, and received all medical treatment for his alleged injuries there.  The Lilly personnel most knowledgeable about, and most of the Lilly documents relevant to. the research. design. development, labeling. manufacturing and marketing of Zyprexa® pertinent to plaintiff's allegations are located at its principal place of

Ingram, 2003 WL 256729, at *2-3: see also Airport Working Group of Orange County, Inc. v. U.S Dept. of Defense, 226 F. Supp.2d 227, 229 (D.D.C. 2002) (quoting Stewart Organization v. Ricoh Corp., 487 U.S. 22, 29-30, 108 S. Ct. 2239, 101 L.Ed. 2d 22 (1988)) (once it is shown that venue in the proposed transferee forum is proper, section 1404(a) "'place[s] discretion in the district courts to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness . . . [and] calls on the [] court to weigh in the balance a number of case-specific factors' relating to both the private interests of the parties and the interests of the public").

## A.    The Private Interests: The Convenience of the Parties and Witnesses Weighs Heavily In Favor of Transfer to the Middle District of North Carolina

In Ingram, this Court found that the private interests factors weighed against transfer for reasons not present here. Id., 2003 WL 256729, at *3. Ingram involved the drug DES as to which there had been a considerable history of litigation and settlements in the District of Columbia, as well as a statute of limitations dispute. Id., 2003 WL 256729, at *3, 5 n.2. In the present action, there is no history of Zyprexa® litigation in the District of Columbia nor is there any issue as to the statute of limitations. In Ingram, moreover, there was no allegation, as here, that any witness would be unavailable for trial in the District of Columbia.[3] Id., 2003 WL 256729, at *3.

In the Middle District of North Carolina, plaintiff will be permitted to bring suit in his own backyard while bringing each of the parties and the tranferee court itself closer to the

---

[3] As the parties have not exchanged initial disclosures or initial requests for written discovery or documents, Lilly has not yet identified the universe of potential non-party of witnesses with knowledge of the events giving rise to plaintiff's claims, or determined which of those potential witnesses are most relevant to plaintiff's claims and Lilly's defenses. While it is known that most, if not all, of the potential non-party witnesses reside in North Carolina, it is not possible to know at this time whether these witnesses will be available or appear voluntarily for trial in the District of Columbia.

# Appendix 11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LORI ANN FASTINO,

Plaintiff,

v.

ELI LILLY AND COMPANY,

Defendant.

Civil Action 02-02210 (HHK)

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lori Ann Fastino ("Fastino"), brings this diversity action for damages arising from her alleged exposure *in utero* to diethylstilbestrol ("DES"). Presently before this court is defendant Eli Lilly and Company's ("Eli Lilly") motion to transfer this case to the District of Massachusetts [#6]. Upon consideration of defendant's motion, the opposition thereto, and the record of this case, the court concludes that defendant's motion to transfer must be denied.

## I. BACKGROUND INFORMATION

Fastino is a resident of Rhode Island. Eli Lilly is an Indiana pharmaceutical corporation which manufactured, marketed, and sold DES throughout the United States. Fastino alleges that sometime between 1967 and 1968, her mother ingested DES while she was pregnant with Fastino pursuant to her physician's prescription. Fastino alleges that as a result of her mother's use of DES during pregnancy, she has suffered physical injuries including reproductive malfunction and infertility.

## II. ANALYSIS

### A.    Legal Standard for Motion to Transfer

Eli Lilly has moved to transfer this case to Massachusetts pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The moving defendant "bears the burden of demonstrating that transfer pursuant to Section 1404(a) is warranted." *Gemological Inst. of Am., Inc. v. Thi-Dai Phan*, 145 F. Supp. 2d 68, 71 (D.D.C. 2001). Section 1404(a) grants district courts broad discretion to transfer cases, but they must "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The court must first determine whether the action could have been brought originally in the District of Massachusetts. The court must consider whether venue and personal jurisdiction are proper in the transferee district. *Lamont v. Haig*, 590 F.2d 1124, 1131 n.45 (D.C. Cir. 1978); *see Relf v. Gasch*, 511 F.2d 804, 806-07 (D.C. Cir. 1975). Once a court makes this determination, it must then "balance a number of case-specific factors which include the private interests of the parties as well as public interests such as efficiency and fairness." *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000). The private interest factors include: (1) the plaintiff's choice of forum, (2) the defendant's choice of forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties, (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the districts, and (6) the ease of access to sources of proof. *Id.* The public interest factors include: (1) the transferee district's

2

familiarity with the governing law, (2) the relative congestion of both the transferor and transferee courts, and (3) the local interest in deciding local controversies at home. *Id.*

**B.    Jurisdiction and Venue in the District of Massachusetts**

    **1.    Subject Matter Jurisdiction**

The District of Massachusetts has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship. Fastino is a resident of Rhode Island; Eli Lilly is incorporated and has its principal place of business in Indiana. Eli Lilly does not contest the amount in controversy requirement at this time. Thus, the District of Massachusetts would have subject matter jurisdiction.

    **2.    Personal Jurisdiction**

A federal court in Massachusetts would be able to assert personal jurisdiction over Eli Lilly based on Fastino's allegations that the company sold DES to Fastino's mother in Massachusetts. The Massachusetts long-arm statute extends to torts allegedly committed in Massachusetts. *See* Mass. Gen. Laws ch. 223A, § 3.

    **3.    Venue**

"A civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought . . . in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(a)(2). Fastino alleges that her *in utero* exposure to DES occurred during her mother's pregnancy in Massachusetts.

Because subject matter jurisdiction, personal jurisdiction, and venue would be proper in the District of Massachusetts, this case is one which might have been brought there.

## C.    Private Interest Factors

The court now turns to the private interest factors.  Typically, the plaintiff's choice of forum is given considerable weight, but it is entitled to "substantially less deference when the forum preferred by the plaintiff is not his home forum." *Boers v. United States,* 133 F. Supp. 2d 64, 65 (D.D.C. 2001) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255-56 (1981)). Because Fastino is not a resident of the District of Columbia, the court gives less deference to her choice of forum. Eli Lilly's choice of another forum, however, is undermined by the fact that Eli Lilly previously chose the District of Columbia as the forum for its own litigation against its insurers regarding coverage for DES claims and opposed the insurers' motion to transfer the case to another forum. *See Eli Lilly & Co. v. Home Ins. Co.,* 794 F.2d 710 (D.C. Cir. 1986); Ex. 2 to Pl.'s Opp'n.  The balance tips slightly in favor of this district, then, when weighing the parties' choices of fora.

Eli Lilly maintains that Fastino's claim arose in Massachusetts where her *in utero* exposure occurred.  This factor favors the District of Massachusetts.

Eli Lilly has not shown that the convenience of the parties and their witnesses favors transfer to Massachusetts.  Eli Lilly argues that the relevant treating physicians and pharmacists of Fastino and her mother during the pregnancy, as well as relevant medical records, are in Massachusetts. Fastino represents, however, that Fastino's mother and her treating physician are both deceased, and that medical records and witnesses will be voluntarily produced in the District of Columbia without need for subpoena.  Fastino's expert witnesses are located in Maryland, Texas, Pennsylvania, and Alabama; Eli Lilly's experts are located in Alabama, Maryland, and

4

New Jersey. There has been no showing that holding trial in the District of Columbia would impede the parties' access to evidence.

The court concludes that Eli Lilly has failed to show that the private factors weigh in favor of transferring this case to Massachusetts.

**D.    Public Factors**

The court now turns to the public interest factors. The "interests of justice are best served by having a case decided by the federal court in the state whose laws govern the interests at stake." *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 8 (D.D.C. 1996). In this case, Massachusetts product liability law would govern the dispute. There is no evidence regarding the relative congestion of the district courts of the District of Columbia and Massachusetts. Massachusetts has an interest in determining this controversy because the alleged tort occurred in Massachusetts. The District of Columbia also has an interest in the controversy because it is where Eli Lilly's lobbying efforts to gain approval of DES and the original industry-wide promotion of DES occurred. *See* Ex. 3 to Pl.'s Opp'n. In addition, substantial litigation concerning DES has occurred in this district in the past. *See, e.g., Shields v. Eli Lilly & Co.*, 895 F.2d 1463 (D.C. Cir. 1990); *Tidler v. Eli Lilly & Co.*, 851 F.2d 418 (D.C. Cir. 1988); *Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710 (D.C. Cir. 1986). Therefore, the court concludes that Eli Lilly has failed to show that the public factors favor transfer.

## III. CONCLUSION

Although this action could have been brought in the District of Massachusetts, the convenience of the parties and the witnesses and the interests of justice do not favor transfer to Massachusetts. Therefore, this court concludes that defendant's motion to transfer must be DENIED.

## ORDER

Accordingly, it is this 8th day of October, 2003, hereby:

**ORDERED**, that defendant's motion to transfer [#6] is **DENIED.**


Henry H. Kennedy, Jr.
United States District Judge

6

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
ELAINE CODY, et al.,                     )
                                         )
                    Plaintiffs,          )       Civil Action No.: 07-1887 (JR/AK)
                                         )       Next Event:    Plaintiffs' Rule 26(a)(2) Report
        v.                               )              Due April 3, 2008
                                         )
ELI LILLY AND COMPANY,                   )
                                         )
                    Defendant.           )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

**(PROPOSED) ORDER**

UPON CONSIDERATION of Defendant Eli Lilly and Company's Motion to Transfer to

the District of Massachusetts, and Plaintiff's Opposition thereto, and for good cause shown, it is

this ___ day of _____, 2008,

**ORDERED** that Defendant Eli Lilly and Company's Motion be DENIED.

_____
The Honorable James Robertson
United States District Judge